POWELL DUFFRYN TERMINALS, INC., et al., Plaintiffs,

v.

CALGON CARBON CORPORATION, and Rayonier, Inc., Defendants.

No. CV 497–080.

United States District Court, S.D. Georgia, Savannah Division.

April 20, 1998.

D. Michael Conner, Bouhan, Williams & Levy, Edwin D. Robb, Jr., Savannah, GA, for Powell Duffryn Terminals, Inc., AXA Global Risks (UK), Ltd, Phoenix Assurance PLC, Yorkshire Insurance Company, Ltd., Terra Nova Insurance Company Ltd., Zurich Re (UK) Ltd., Atlas Assurance Company Ltd., Skandia Marine Insurance Company (UK) Ltd., Commercial Union Assurance Company PLC, The Tokio Marine & Fire Insurance Company (UK) Ltd., Ocean Marine Insurance Company Ltd., Indemnity Marine Assurance Company Ltd., Northern Assurance Company Ltd., Compagnie D'Assurances Maritimes Ariennes et Terrestres, Assurances Generales de France I.A.R.T., Sphere Drake Insurance PLC, HIH Casualty & General Assurance, Ltd., Assicurazioni Generali, S.P.A.

Walter Rhett Tanner, Jacqueline E. Kalk, Jones, Day, Reavis & Pogue, Atlanta, GA, C. Michael Johnson, Henry D. Fellows, Jr., David C. Keating, Fellows, Johnson & La Briola, Atlanta, GA, Arthur Martin Kent, Kent, Worsham & Smart, Savannah, GA, Janine Cone Metcalf, G. Lee Garrett, Jr., Michael J. McConnell, Jones, Day, Reavis & Pogue, Atlanta, GA, Joseph A. Fischette, Pittsburgh, PA, David A. Sapp, Michele L. Davis, Newman, Sapp & Davis, Atlanta, GA, for Calgon Carbon Corporation, Rayonier, Incorporated.

## ORDER

NANGLE, District Judge.

Before the Court are two motions for summary judgment filed by defendant Calgon Carbon Corporation ("Calgon") and defendant Rayonier, Inc. ("Rayonier"). For the reasons set forth below, the defendants' motions are granted in full.

## BACKGROUND

The above-captioned case arises out of an explosion and fire on April 10, 1995, which occurred at a chemical storage facility owned by plaintiff, Powell Duffryn Terminals, Inc. ("PDT"), located in Savannah, Georgia. In 1995, Powell Duffryn PLC ("Powell Duffryn"), a United Kingdom corporation, owned numerous operating subsidiaries that offered

a broad range of shipping, engineering and storage services including chemical storage. Powell Duffryn owned a number of subsidiary companies which in turn owned and operated eight bulk liquid storage terminals in Australia, South Africa, the United Kingdom and the United States. In 1995, PDT, Powell Duffryn's United States subsidiary, offered chemical storage services in Savannah, Georgia; Lemont, Illinois; and Bayonne, New Jersey. In 1995, the following was true: (1) PDT's United States headquarters were located at its Bayonne facility, which had over one hundred tanks and stored a multitude of chemicals, including flammable liquids; (2) PDT's Lemont facility had approximately ninety tanks and also stored numerous chemicals, including flammable liquids; and (3) PDT's Savannah facility had ten tanks in operation.

In 1994, PDT entered into a contract with TR Metro Chemicals, Inc. ("TR"), which required PDT to store on behalf of TR roughly 2.4 million gallons of crude sulfate turpentine ("CST") per year for three years beginning in January of 1995. CST is a flammable liquid containing sulfur which emits offensive odors and is used in the manufacture of perfumes and other end products. The foregoing CST was the first flammable liquid stored by PDT at its Savannah facility. PDT sought and received permission from the Georgia State Fire Marshal's office to store CST. The City of Savannah Fire Department required PDT to install a fixed-foam fire protection system on the storage tanks. In late December of 1994, PDT obtained temporary approval from the Savannah Fire Department to store CST for about six weeks without fire protection. PDT was provided a 1989 ITT Rayonier[1] Material Safety Data Sheet ("MSDS") for CST in December of 1994.

Because of the odor omitted by CST, PDT decided to design an odor control system. PDT also planned to implement the fixed-foam fire protection system required by the Savannah Fire Department in addition to the main fire system already in place. PDT's Savannah terminal manager, James Sculati, had no previous experience with the storage of flammable liquids. Richard Phillips was made Project Manager and instructed to design the odor control and fire protection systems. Phillips had no formal training or education in the storage of flammable liquids or in the design and installation of odor control or fire protection systems. Phillips had, however, worked under the supervision of others on odor control systems. PDT decided to purchase activated carbon in canisters from defendant Calgon[2] to cleanse the odorous CST vapors from the three tanks where the CST would be stored. PDT ordered two VentSorb[3] drums containing BPL activated carbon from Calgon.[4] The odor control system was installed by connecting a piping system from the three CST tanks to the two carbon canisters. CST vapors from the three tanks would pass through the piping system into the carbon canisters and through adsorption[5] on the carbon, the odors would be cleansed.

1. Defendant Rayonier is a paper manufacturing company with a plant in Jesup, Georgia. Rayonier produces CST at its Jesup plant.

2. Defendant Calgon is in the business of manufacturing and selling activated carbon granules used in vapor recovery and cleansing systems at chemical storage facilities.

3. VentSorb is the name of the fifty-five gallon drum Calgon uses for shipment of its activated carbon.

4. All of Calgon's drums containing activated carbon have the following warning silk-screened on their side in letters fourteen inches wide by six inches tall:
   **WARNING**
   **Activated carbon is susceptible to exothermic reaction on contact with oxidizable material,** such as ketones under certain conditions. Flooding the vessel with water will extinguish any hot zones. A large volume of steam will be generated in the process of extinguishing the hot zones. The carbon itself will not exhibit flaming, although combustible material in contact with the carbon may exhibit flaming.

   **REFER TO PRODUCT BULLETIN OR CALGON CARBON REPRESENTATIVE BEFORE INSTALLATION AND USE ....**

5. Adsorption is the "formation of a layer of gas, liquid or solid on the surface of a solid or, less frequently, of a liquid." (Defendant Calgon's brief in support of motion for summary judgment at 5 n. 3). Activated carbon is an adsorbent which is a "substance on the surface of which a substance is adsorbed." *Id.*

PDT began storing CST[6] in January of 1995, without the fixed-foam fire protection system in place. In early January, Phillips ordered flame arresters, Ansul foam canisters and emergency vents for installation on the storage tanks. PDT began construction of the fixed-foam fire protection system in early March of 1995. The activated carbon was installed in late March. Although PDT had ordered the flame arresters and they had arrived on site, they were not installed prior to the fire. On April 10, 1995, an explosion and fire occurred in tank 23 at PDT's Savannah facility. Plaintiffs allege that the explosion and fire started as follows and, for the purposes of summary judgment, the Court accepts plaintiffs' explanation as true. The fire started as a result of a reaction between CST vapors and the activated carbon in defendant Calgon's carbon canisters. When the CST vapors traveled through the activated carbon canisters, heat was generated by adsorption and by the chemical reactivity of the CST ingredients with the activated carbon, which resulted in released energy. Consequently, a drastic temperature increase occurred. A hot spot developed which triggered the auto-ignition[7] of the CST vapors. Upon ignition of the CST vapors, the flame front then traveled through the piping system into one of the three tanks containing CST and an explosion occurred.

As a result of the fire, local residents and businesses were evacuated and their properties were damaged. Plaintiff PDT also suffered considerable property damage. To date, plaintiffs, under compulsion of law but without admitting liability, have spent over $57,000,000.00 resolving claims stemming from the fire. Plaintiffs filed this case seeking indemnity from defendants and alleging that their failure to warn PDT and their negligent misrepresentations were the proximate causes of the fire. Specifically, plaintiffs allege that defendant Calgon had a duty to warn PDT that its carbon was unsafe for use with CST, that its warnings were inadequate as a matter of law and that the failure to warn was the proximate cause of the fire. Plaintiffs also allege that Calgon made negligent misrepresentations regarding the use of its carbon with CST, which PDT relied on to its detriment. Plaintiffs further allege that defendant Rayonier had a duty to warn PDT that the flash point of its CST was lower than reported in the MSDS and that the CST contained two highly reactive organic sulfur compounds. Plaintiffs also bring a claim for negligent misrepresentation against Rayonier based on the information contained in the MSDS.

### ANALYSIS

#### A. Summary Judgment Standard

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56 advisory committee's note, *cited in Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is appropriate only when the pleadings, depositions, and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). A court must view the evidence and any inferences that may be drawn from it in the light most favorable to the nonmovant. *See Mercantile Bank & Trust Co., Ltd. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985).

The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Such a showing shifts to the nonmovant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477

---

**6.** PDT stored CST which was manufactured by defendant Rayonier along with CST manufactured by several other manufacturers (including Georgia Pacific Corporation, Champion International, Weyerhauser, Westvaco and Stone Container) in three tanks numbered 18, 22 and 23.

**7.** Auto-ignition is similar to spontaneous combustion because it is ignition without an external spark or flame. (Plaintiffs' response to defendants' motions for summary judgment at 3).

U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Thompson v. Metropolitan Multi-List, Inc.,* 934 F.2d 1566, 1583 n. 16 (11th Cir.1991). "Factual disputes that are irrelevant or unnecessary will not be counted," *United States v. Gilbert,* 920 F.2d 878, 883 (11th Cir.1991) (citation omitted), and a mere scintilla of evidence supporting the nonmovant's position will not fulfill this burden. *See Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990).

### B. *Duty to Warn*

■ Defendants Calgon and Rayonier have filed motions for summary judgment alleging that under Georgia law they had no duty to warn PDT of the dangers associated with the use of their products because PDT was a sophisticated user of said products. Defendants further argue that even if they had a duty to warn, they satisfied it and any failure to warn was not the proximate cause of the injury. The parties agree that Georgia law applies to this case. For a plaintiff to prevail on a claim for failure to warn, he must show that the defendant had a duty to warn, defendant breached that duty and the breach was the proximate cause of plaintiff's injury. *See Stiltjes v. Ridco Exterminating Co.,* 178 Ga.App. 438, 343 S.E.2d 715, 719, *aff'd,* 256 Ga. 255, 347 S.E.2d 568 (1986)(holding pesticide distributor had no duty to warn licensed commercial applicator of risks of pesticides); *Thornton v. E.I. Du Pont De Nemours & Co.,* 22 F.3d 284, 289 (11th Cir.1994)(holding facts demonstrated no breach of duty to warn as matter of law); *Powell v. Harsco Corp.,* 209 Ga.App. 348, 433 S.E.2d 608, 610 (1993)(holding inadequacy of warning was not proximate cause of injury).

■ Whether or not a duty to warn exists "depends upon foreseeability of the [danger], the type of danger involved, and the foreseeability of the user's knowledge of the danger." *Niles v. Board of Regents of the University System of Georgia,* 222 Ga. App. 59, 473 S.E.2d 173, 175 (1996) (citations omitted). There is no duty to warn of an open and obvious danger of a product. *See Weatherby v. Honda Motor Co.,* 195 Ga.App. 169, 393 S.E.2d 64, 68 (1990). There is also no duty to warn when the person using the product "should know of the danger, or should in using the product discover the danger." *Whirlpool Corp. v. Hurlbut,* 166 Ga. App. 95, 303 S.E.2d 284, 288 (1983). A user of a product need not know "the precise, physical nature of the hazard presented by his 'use' of the product; it is sufficient if he is aware generally that the 'use' being made of the product is dangerous." *Id.* "Ordinarily, there is no duty to give warning to the members of a profession against generally known risks. 'There need be no warning to one in a particular trade or profession against a danger generally known to that trade or profession.'" *Niles,* 473 S.E.2d at 175 (citing *Eyster v. Borg–Warner Corp.,* 131 Ga.App. 702, 206 S.E.2d 668, 670 (1974)). When determining whether a danger is generally known, courts "should use an objective point of view, as opposed to subjective, since the user's perceptions are irrelevant." *Morris v. Clark Equipment Co.,* 904 F.Supp. 1379, 1383 (M.D.Ga.1995).

### I. *Defendant Calgon*

■ Plaintiffs allege that Calgon had a duty to warn PDT that its activated carbon was unsafe for use with CST, that its warnings were inadequate as a matter of law and that the failure to warn was the proximate cause of the fire. Calgon argues summary judgment is appropriate because PDT was a sophisticated user of activated carbon. The Court agrees that PDT was a sophisticated industrial user of activated carbon and knew or should have known of the risks associated with its use of the carbon with flammable chemicals such as CST. PDT was in the business of storing flammable chemicals, knew that the use of activated carbon could cause a fire under certain conditions and should have investigated what those conditions were.

Calgon had no duty to specifically warn PDT of the danger of using its product with CST because PDT knew of the general risk of fire associated with the use of activated carbon when combined with the vapors from sulfur compounds. PDT had used activated carbon in its other U.S. facilities and knew there was a danger of fire. PDT asserts that it didn't know that CST contained sulfur and

that if it had known it would not have used the CST with the activated carbon because it knew of the potential for fire when combining the two. It was incumbent upon PDT, however, which was in the business of providing industrial chemical storage, to determine what chemical compounds CST contained and to investigate any potential reactions which might occur when the CST was combined with activated carbon.

In *Niles v. Board of Regents of the University System of Georgia,* 222 Ga.App. 59, 473 S.E.2d 173 (1996), a physics doctoral student at Georgia Tech was injured in a laboratory accident when an explosion occurred after he mixed chemicals in a metal container. *Id.* at 174. The student, Niles, argued that the University and his professor had a duty to specifically warn him against the dangers of mixing acetone, ethanol and nitric acid in a metal container. *Id.* The court held, however, that the professor and the University had the right to assume that a doctoral student in physics "would either know the dangers of mixing these chemicals or would perform the research necessary to determine those dangers and take the necessary precautions." *Id.* at 175. The court went on to reason that Niles was deemed to have knowledge of the danger of mixing said chemicals equal to the knowledge of the University because "he knew ethanol was flammable and that acid on metal would produce hydrogen gas, and had access to information which would tell him more about these chemicals." *Id.* at 176. PDT, like the student in *Niles,* knew that the use of activated carbon under certain conditions could lead to a fire, had access to information which would have further explained the risk and should have researched the dangers and taken appropriate precautions.

■ Even if Calgon did have a duty to warn, however, any failure to warn was not the proximate cause of the injury. PDT did not read the warnings that Calgon [8] did provide and so any claim that PDT would have read, much less heeded, any additional warnings is purely speculative. *Id.* Knowing the dangerous propensities of flammable liquids like CST and knowing that activated carbon could cause fire under certain circumstances, PDT failed to investigate or take appropriate precautions. Like the student in *Niles,* PDT "preferred convenience to safety and knowingly took the chance." *Id.*

Plaintiffs have failed to come forward with any evidence to rebut the fact that PDT was a sophisticated user of activated carbon. Defendant Calgon had no duty to warn PDT of the dangers associated with the use of its activated carbon. Even if it had such a duty, Calgon's failure to warn was not the proximate cause of the fire.[9] Plaintiffs have failed to meet their burden on their failure to warn claim and Calgon is entitled to judgment as a matter of law.

## II. *Defendant Rayonier*

■ Plaintiffs allege defendant Rayonier had a duty to warn PDT that the flash point of its CST was lower than reported in the MSDS and that its CST contained two highly reactive organic sulfur compounds, dimethyl sulfide and methyl mercaptan. Rayonier, like Calgon, argues it had no duty to warn because PDT was a sophisticated user of flammable liquids like CST. The Court agrees that PDT was a sophisticated user of flammable liquids and therefore Rayonier had no duty to warn PDT of the dangers associated with its use of CST. Plaintiffs stretch credulity when they suggest that

---

8. Plaintiffs attempt to argue that Calgon did not include any warning with the shipment of its product because some of PDT's employees do not recall receiving them. Calgon, however, has demonstrated it has a routine practice of enclosing a bulletin explaining the dangers of the product and has shown that each Calgon drum had silk-screened on it a warning which was fourteen inches wide by six inches tall. Plaintiff has not come forward with anything to rebut Calgon's evidence. The Court finds that PDT received Calgon's warnings. *See Pratt v. Brown Mach. Co.,* 855 F.2d 1225, 1233 (6th Cir.1988)(employ-

ee's mere speculation that he did not receive document is not enough to overcome summary judgment); *In re Swine Flu Immunization. Prod. Liab. Litig.,* 533 F.Supp. 567, 573–4 (D.Col.1980)(holding for purposes of summary judgment routine practice is enough to show plaintiff received warning).

9. Because the Court finds Calgon had no duty to warn, it does not reach the issue of the whether or not Calgon's warnings were adequate.

PDT was not a sophisticated user of flammable liquids such as CST. PDT's United States terminals had roughly two hundred tanks, which were capable of storing over two million barrels of chemicals. Prior to the fire, PDT had stored flammable liquids at its two other U.S. terminals and had consulted outside engineers to assist it with the design of storage and fire protection systems for said liquids.

Because PDT was a sophisticated user of flammable liquids, Rayonier had no duty to warn PDT of any dangers associated with the use of its CST. *See Niles,* 473 S.E.2d at 175–76. On the contrary, Rayonier had every right to assume that PDT either knew or would find out what chemicals CST contained, how other chemicals coming into contact with CST would react with it and what precautions should be taken in the storage of CST. *Id.* at 175. Plaintiffs have failed to come forward with any evidence which supports their claim for failure to warn [10] and defendant Rayonier is entitled to judgment as a matter of law.

## C. *Negligent Misrepresentation*

■ To establish a claim for negligent misrepresentation, a plaintiff must show that: (1) defendant supplied false information; (2) plaintiff reasonably relied on that false information; and (3) such reliance was the proximate cause of plaintiff's injury. *See Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.,* 267 Ga. 424, 479 S.E.2d 727, 729 (1997); *Williams v. Fallaize Ins. Agency, Inc.,* 220 Ga.App. 411, 469 S.E.2d 752, 754 (1996). To survive a motion for summary judgment, a plaintiff must show "some evidence as to each element." *Williams,* 469 S.E.2d at 754 A plaintiff cannot show justifiable reliance if he has failed to exercise due diligence to discover the information withheld. *See Delk v. Tom Peterson Realtors, Inc.,* 220 Ga.App. 576, 469 S.E.2d 741, 742 (1996). In "an arms-length business or contractual relationship there is no obligation to

disclose information which is equally available to both parties." *See Southern Intermodal Logistics, Inc. v. Smith & Kelly Co.,* 190 Ga.App. 584, 379 S.E.2d 612, 614 (1989). When the transaction at issue is an arms-length one, courts have held that plaintiff's failure to discover information available in the industry constitutes a lack of due diligence. *Id.; Williams v. Dresser Indus., Inc.,* 120 F.3d 1163, 1172 (11th Cir.1997).

### I. *Defendant Calgon*

Plaintiffs allege that Calgon made negligent misrepresentations when one of its representatives told PDT that its carbon was safe for use with CST and that PDT relied on this statement to its detriment. Calgon has moved for summary judgment arguing that plaintiffs have failed to demonstrate that it made any false statements.

■ Plaintiffs allege that one week prior to the fire Chris Chaplin, PDT's newly hired Safety Officer for the Savannah facility, requested that Calgon fax him a product bulletin. Plaintiffs further allege that after Chaplin reviewed the product bulletin he questioned a Calgon representative about the use of its carbon with CST, which might contain sulfur compounds, and was told that such use was "O.K." Calgon has come forward with evidence which demonstrates that use of its activated carbon with CST is safe when appropriate precautions are taken. Even plaintiffs' own expert agrees that activated carbon can be safely used with CST when appropriate precautions are taken. Calgon supports its position by pointing to a chemical processing company in Jacksonville, Florida, SCM Glidco, which stored hundreds of thousands of gallons of CST and used carbon canisters in that storage from 1976 through 1989 without a single incident of fire relating to the storage. Plaintiffs have not come forward with any evidence to support its claim that Calgon's statements [11] were

---

**10.** Because the Court finds Rayonier had no duty to warn, it does not reach the issue of the whether or not Rayonier's warnings were adequate.

**11.** Plaintiffs make much ado about nothing when they argue that Calgon should have disclosed an internal memoranda called the Gunnerson

memo. Plaintiffs allege that this memo describes the reaction of Calgon's carbon with various chemicals and indicates concern over fire. Specifically, plaintiffs allege the memo refers to two organic sulfur compounds, dimethyl sulfide and methyl mercaptan, contained in CST and that the

false.[12]

■ Even if plaintiffs were able to prove that Calgon had made false statements, they could not prevail because they have failed to demonstrate they justifiably relied on said statements since they did not exercise due diligence in discovering the information. As discussed above, PDT did not take appropriate steps to discover whether or not CST and activated carbon could be used safely together. PDT admits that Chaplin was concerned about the safe use of CST with activated carbon, yet he only made a cursory inspection of the odor control system and just assumed that Calgon's recommended safety precautions had been implemented. PDT did not read Calgon's warnings, did not follow recommended safety precautions and did not draw on information which was available within its own company and in the industry generally, so it cannot claim that it justifiably relied on Calgon's statements. *See Williams,* 120 F.3d at 1172. Further, any reliance on statements made by Calgon was not the proximate cause of the fire. Calgon has successfully demonstrated that had PDT taken appropriate precautions the fire could have been prevented. The Court finds that PDT's own negligence was the proximate cause of the fire.

The Court finds that Calgon did not make any misrepresentations, that PDT did not reasonably rely because it did not exercise due diligence and that any statements made by Calgon were not the proximate cause of the injury. Defendant Calgon is entitled to judgment as a matter of law on plaintiffs' negligent misrepresentation claim.

## II. *Defendant Rayonier*

■ Plaintiffs bring a claim for negligent misrepresentation against Rayonier based on the information contained in the MSDS. Plaintiffs allege that Rayonier was negligent in listing the flash point of its CST as falling between 90$–110$ because the true flash point is actually much lower. Plaintiffs further allege that Rayonier was negligent in failing to state in the MSDS that its CST contained two highly reactive organic sulfur compounds, dimethyl sulfide and methyl mercaptan. PDT alleges it relied to its detriment on these representations and that said representations were the proximate cause of the explosion and fire. Defendant Rayonier has moved for summary judgment arguing that it was not negligent in compiling the information contained in the MSDS and that even if it were negligent, said negligence was not the proximate cause of the explosion and fire. The Court finds that PDT did not reasonably rely upon said representations because it did not exercise due diligence and that any representations [13] on the part of defendant Rayonier were not the proximate cause of the injury.

The chemical make-up of CST and its reaction with activated carbon were facts which PDT could have discovered if it had exercised due diligence. *See Williams,* 120 F.3d at 1172. Rayonier's 1994 MSDS, which was available to PDT before the fire, specifically warned against "impregnating combustibles with CST" and warned the user against combining the product with other materials. As a company in the business of storing flammable liquids, PDT should have conducted its own tests to determine the reactivity of these two chemicals. *See Delk,* 469 S.E.2d at 742.

■ Even if plaintiffs could demonstrate that they justifiably relied on Rayonier's statements, Rayonier has demonstrated that the proximate cause of the injury was PDT's

---

memo should have been disclosed. Calgon, however, correctly points out that this memo hides nothing because it specifically states that these two chemicals and their reactivity with activated carbon have not been tested.

**12.** Plaintiffs also point to statements made by Calgon representatives to two other PDT employees, Vivian Yao and Teresa Bruce, which were made when PDT purchased the carbon. Plaintiffs allege that it relied upon statements made by Calgon in its selection of the carbon. Calgon,

however, has successfully demonstrated that PDT did not rely on any such statements because it did not follow Calgon's recommendation on the type of carbon to use. Calgon recommended that PDT use Centaur carbon and PDT decided instead to purchase BPL carbon.

**13.** The Court will assume, without deciding, for the purposes of summary judgment that Rayonier's statements were false.

own negligence. PDT was negligent by failing to investigate the chemical makeup of the CST, failing to take appropriate precautions and failing to gather information on CST's reactions with activated carbon. A defendant is not responsible for acts by the ultimate user which it could not foresee. *See White v. W.G.M. Safety Corp.*, 707 F.Supp. 544, 548 (S.D.Ga.1988). Rayonier could not reasonably be expected to foresee that PDT would store a flammable liquid with activated carbon, a combustible, without using appropriate safety precautions. *See generally Omark Indus., Inc. v. Alewine*, 171 Ga.App. 207, 319 S.E.2d 24, 25 (1984)(holding summary judgment appropriate on issue of proximate cause when record shows cause of accident was plaintiff's negligent installation and maintenance of product). Plaintiffs have failed to prove that they reasonably relied on any statements made by Rayonier or that said reliance was the proximate cause of the fire. Defendant Rayonier is therefore entitled to judgment as a matter of law on plaintiffs' negligent representation claim.

### D. *Contribution and Indemnity*

Plaintiffs have failed to establish their underlying claims, so their claims for contribution and indemnity must also fail. *See Crockett v. Uniroyal, Inc.*, 772 F.2d 1524, 1530 (11th Cir.1985).

### *CONCLUSION*

For the foregoing reasons, plaintiffs have failed to show there are any genuine issues of material facts and defendants have shown that they entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Calgon Carbon Corporation's motion for summary judgment be and is granted.

**IT IS FURTHER ORDERED** that defendant Rayonier, Inc.'s motion for summary judgment be and is granted. The Clerk is directed to close the above-captioned case.