A07A1279. CITY OF DEMOREST et al. v. ROBERTS
& DUNAHOO PROPERTIES, LLC et al.

(655 SE2d 617)

MIKELL, Judge.

The City of Demorest, Malcolm Hunnicutt, Perry Hendrix, John Popham, Paul Skelton, Grady Tench, and Larry Shedd, individually and in their official capacities (collectively referred to herein as the "City Defendants"), appeal the denial of their motion for summary judgment in this action involving the issuance of a land disturbance permit to land developers Roberts & Dunahoo Properties, LLC, and Roy Earl Roberts, Sr. (the "Developers"). In their action, the Developers alleged that the City Defendants breached their ministerial duties to follow the City's ordinances. On appeal, appellants argue that the trial court's denial of their motion for summary judgment was erroneous. We agree and reverse.

> In reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the evidence. To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

So viewed, the Developers obtained a land disturbance permit to develop a residential subdivision from the City of Demorest in October 2003. On November 3, 2003, Rick and Jennifer Austin petitioned for a writ of mandamus and injunctive relief against the City and the Developers to compel the City to comply with the "City of Demorest Land Use Ordinance" (the "Ordinance") as it related to the approval of the Developers' proposed subdivision and to enjoin the Developers from working on the subdivision. The trial court found that the City failed to comply with the notice and public hearing requirements set forth in the "Habersham County Subdivision Regulations" (the "Regulations")[2] and that the Developers failed to obtain a valid preliminary plat approval, also required by the Regulations. Consequently, the court issued the writ of mandamus, ordering the City to strictly adhere to the Ordinance and enjoining the Developers from further construction or earth-disturbing work.

The Developers filed a second application under the Regulations on December 5, 2003. Ron Roberts, one of the developers and an

---

[1] (Footnote omitted.) *Morris v. Johnson*, 262 Ga. App. 182-183 (585 SE2d 375) (2003).

[2] The Ordinance incorporated the Regulations by reference.

officer of Roberts & Dunahoo Properties, averred that the city attorney instructed the Developers to meet with the City's land use administrative officer to determine what variances would be required, during which meeting the Developers specifically discussed their inability to meet the set-back requirements because of the proposed lot sizes; that the Developers asked that the application be tabled until they could obtain a compliant plat, and the City tabled it until the February 3, 2004, city council meeting; that the plat was not available for filing until January 27, 2004, and the Developers' counsel gave the City a letter requesting that the hearing be rescheduled so that the City could give the required notice, but the City insisted on continuing as planned; that the Developers met with the city council before the hearing and were told that they should submit the application under the "experimental subdivisions" provisions of the Regulations; and that the Developers' counsel complied but asked for variances from the Regulations in the alternative.

The City approved the Developers' second application after the February 3, 2004, city council hearing. The Austins then filed a motion for contempt against the City based on flaws in the application process. On April 12, 2004, the trial court issued its order holding the City in contempt of its writ of mandamus, finding that the City granted preliminary plat approval in spite of the following deficiencies: (1) no notice was given to the adjoining landowners; (2) no evidence was provided to show non-conformance with Section 505 of the Regulations;[3] (3) the preliminary plat did not show the minimum front yard building set-back lines as required by Section 405 (d) (11); and (4) the preliminary plat was delivered to the City less than 15 days before the hearing. The trial court also ordered the City to pay a daily fine until the permits and approvals were revoked. The City subsequently withdrew the Developers' permits.

Roberts also averred that following the court's order the Developers continued to attempt to comply with the Regulations, but the City failed to act on their applications, denied their request for another hearing, and did not identify variances that would have to be granted for the subdivision to continue. On April 20, 2004, the Developers informed the City of the economic harm it had sustained as a result of the City's delay and failure to act and informed the City

---

[3] Section 505 provided that
[a] comprehensive group development, including large-scale construction of housing units together with necessary drives and ways of access may be approved by the Planning Commission although the design of the project does not include standard streets, lots and subdivision arrangements, if departure from the Resolution can be made without destroying its intent, and if substantial evidence can be provided demonstrating the acceptable performance of the non-conformance.

that suit would be filed if the parties could not agree to a monetary settlement. In May 2004, the Developers filed a petition for writ of mandamus against the City, asserting that they had a clear legal right to have their applications for plat approval and map amendment considered and had no remedy other than mandamus to obtain the relief they requested.

In July 2004, the City amended its land use ordinance and subdivision regulations. Roberts averred that the City refused to allow the Developers to proceed under the new ordinance and maintained its refusal to provide a hearing under the old ordinance. The Developers sent another letter to the City, dated September 3, 2004, in response to a proposed settlement agreement, which indicated that they had not agreed to a settlement in the Austin case that absolved the City of liability nor had they agreed to proceed under the new ordinance. Additionally, the Developers informed the City that they would settle only if the old permits were reissued.

On December 29, 2004, the City, the Austins, and the Developers executed a Release and Settlement Agreement (the "Settlement Agreement") wherein, among other things, the Austins agreed not to pursue further legal action to halt the development of the subdivision, that the permits as originally issued may be reissued, and that they would dismiss their action with prejudice and execute a general release in favor of the City. The Developers agreed to sell 1.3 acres of the 26.62-acre plat to the Austins for $16,400 per acre and to dismiss their cross-appeal in the City Defendants' appeal of the superior court's orders. The City agreed to pay the Austins $34,000, in full and final satisfaction of their claims. The parties mutually agreed as follows:

> a. The intent of the parties in entering into this settlement and executing this Settlement Agreement is to terminate the above-referenced lawsuit[, the Austins' action,] and to compromise disputed claims of all the parties. Further, as a part of this settlement, the parties agree not to appeal or otherwise challenge any of the orders entered to date in the Austin Action. b. The parties covenant and agree that all of the obligations of the City of Demorest pursuant [to] any of the Court's orders in the Austin Action have been satisfied in full. c. It is understood by all the parties to this Agreement that this is a full, complete, and final disposition of all disputes, both as to the legal liability for any of the claims in the Austin Action, the equitable remedies sought, or the damages alleged to have been sustained. It is understood that liability is denied by the Defendants in said case, and

that this full and final settlement thereof shall never be treated as an admission of liability at any time or in any manner whatsoever.

The Developers dismissed without prejudice their mandamus action against the City in January 2005.

In August 2005, the Developers filed the underlying suit against the City Defendants for the negligent and improper performance of ministerial duties during the hearings on the permit application. The Developers sought to recover damages for the interest accrued on loans, lost profits and lost incentives, and lost opportunity as to the subdivision. The City answered and later moved for summary judgment on the basis of official immunity, collateral estoppel, and the release executed in the Austin litigation. The trial court denied the motion, concluding that the City's actions in the permit approval process were ministerial, rather than discretionary. The trial court stated that

the subdivision ordinance as adopted by the City provided that certain specific duties were to be performed thereunder. Such duties were ministerial acts and not discretionary ones. Whether such acts were negligent is a question of fact which precludes the granting of judgment as a matter of law.

The trial court issued a certificate of immediate review, and we granted appellants' application for interlocutory appeal.

1. The trial court erred in denying summary judgment to the City Defendants because the Settlement Agreement bars the instant action.

Settlement is, in and of itself, generally construed to be a final disposition of any claim against a party to settlement by a party to the settlement arising out of the subject incident, *unless remaining claims are specifically reserved by any of the parties*. Such compromises are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence.[4]

Because a settlement agreement is a contract,[5] it is

---

[4] (Footnote omitted; emphasis supplied.) *Carey v. Houston Oral Surgeons*, 265 Ga. App. 812, 817 (1) (595 SE2d 633) (2004). See also *McClain v. George*, 267 Ga. App. 851, 854 (2) (600 SE2d 837) (2004).

[5] See *Oldham v. Self*, 279 Ga. App. 703, 707 (1) (632 SE2d 446) (2006).

subject to the usual rules of statutory construction. While the cardinal rule of construction is to determine the intention of the parties, no construction is required or permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.[6]

In this case, the Settlement Agreement is subdivided into separate sections, showing the representations and agreements made by each party to the agreement as well as mutual representations made by all the parties. The parties mutually represented that their intent in entering the Settlement Agreement was to compromise disputed claims of "all" parties, that each party understood that the Settlement Agreement was a "full, complete, and final disposition of *all disputes*, both as to the legal liability for any of the claims in the Austin action, the equitable remedies sought, or the damages alleged to have been sustained." The Developers did not reserve any claims. The Developers argue that at the mediation, the parties and the mediators acknowledged that the settlement did not affect their claims against the City and submitted affidavits from their attorney, Rick Austin, his attorney, and Ron Roberts in support of their position. However,

> [w]here parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the entire contract, and parol evidence of prior or contemporaneous representations or statements is inadmissible to add to, take from, or vary the written instrument.[7]

Furthermore, "[p]arol evidence is not admissible to contradict or construe an unambiguous contract."[8] And "[w]hen the language of an agreement is plain and unambiguous, [we] must afford its literal meaning, despite a party's contention that he understood the contract to mean something else."[9] Therefore, in accordance with these rules, we find that the Settlement Agreement bars the Developers' action.

---

[6] (Citations omitted.) *Peacock v. Spivey*, 278 Ga. App. 338, 339 (1) (629 SE2d 48) (2006).

[7] *Grange Mut. Cas. Co. v. Kay*, 264 Ga. App. 139, 143 (3) (589 SE2d 711) (2003).

[8] (Citation and punctuation omitted.) *Eichelkraut v. Camp*, 236 Ga. App. 721, 724 (1) (513 SE2d 267) (1999).

[9] (Citations and punctuation omitted.) *Bush v. Northside Trucking*, 252 Ga. App. 729, 732 (3) (556 SE2d 909) (2001).

2. Additionally, the Developers' action is barred by the doctrine of collateral estoppel. "Collateral estoppel, like res judicata, requires identity of parties or privity. However, unlike res judicata, collateral estoppel does not require identity of the claim but only precludes readjudication of an issue already adjudicated between the parties or their privies in a prior action."[10] Collateral estoppel also bars those issues that necessarily had to be decided in order for the previous judgment to have been rendered.[11] The court issued a consent judgment making the terms of the Settlement Agreement the judgment of the court, dissolving all injunctions, restrictions, and mandamus relief issued, and giving full force, effect, and validity to the permits originally issued to the Developers. The issue decided in the Austin action was whether the city violated its own ordinances. The issue raised in the instant action is whether the city, acting through its city council members, violated its own ordinances. Thus, the same parties or their privies were involved in the Austin action and the issue of compliance with the ordinance was fully litigated therein. Consequently, collateral estoppel precludes the Developers' action, and the trial court erred when it denied the City Defendants' motion for summary judgment.

3. In light of our holdings in Divisions 1 and 2, we need not address the City Defendants' remaining enumerations of error.

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 30, 2007 —
RECONSIDERATION DENIED DECEMBER 3, 2007 — ■

*Hall, Booth, Smith & Slover, Mark W. Wortham, W. Scott Henwood, Landrum & Friduss, Phillip E. Friduss, Ellen L. Ash*, for appellants.

*Simmons & Hunt, Henry L. Simmons, James E. Staples, Jr., John M. Brown*, for appellees.

---

[10] (Punctuation and footnote omitted.) *Hardwick v. Williams*, 272 Ga. App. 680, 682 (2) (b) (613 SE2d 215) (2005). Accord *Nally v. Bartow County Grand Jurors*, 280 Ga. 790, 791-792 (3) (633 SE2d 337) (2006).

[11] *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 867 (2) (463 SE2d 5) (1995). Accord *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 546 (629 SE2d 260) (2006).