A09A0699. SAFE SHIELD WORKWEAR, LLC v. SHUBEE, INC.
(675 SE2d 249)

BLACKBURN, Presiding Judge.

In this breach of contract action, Safe Shield Workwear, LLC appeals a partial summary judgment order entered in favor of Shubee, Inc., in which the trial court held that four provisions of a settlement agreement between the parties were clear and unambiguous and therefore enforceable as written. Because Safe Shield did not make any arguments below against three of the provisions, we will not consider its newly-minted appellate arguments that one of these provisions was ambiguous and that the provision unduly restricted competition. Regarding the fourth provision, we agree with the trial court that the provision was unambiguous and enforceable, and that therefore no parol evidence was necessary or admissible to construe the provision. Accordingly, we affirm.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

The undisputed facts show that in October 2005, Shubee sued

---

two former employees and a company they had formed (Safe Shield) for breach of certain noncompete agreements and for various business interference claims. The parties resolved the dispute through a settlement agreement executed by all the parties in July 2006. Among other things, the settlement agreement restricted Safe Shield from selling certain products, from selling to certain customers, and from using certain suppliers.

Within months after the execution of the settlement agreement, Shubee concluded that Safe Shield was violating the agreement and therefore brought an action against the two former employees and Safe Shield for breach of contract and for injunctive relief. With the consent of the defendants, the court entered a temporary restraining order ("TRO") and then an interlocutory injunction, both of which required Safe Shield and the two former employees to abide by the terms of the settlement agreement (which was attached to each order).

Shubee then filed two separate motions. First, Shubee moved the court for sanctions, arguing that Safe Shield and the former employees had violated the TRO and interlocutory injunction. Following an evidentiary hearing, the court granted that motion in May 2008, finding that the defendants had been selling products forbidden by the settlement agreement. The court expressly ordered the defendants to cease and desist selling the forbidden products and further ordered them to file monthly compliance affidavits until the case was concluded.

Second, Shubee moved the court for a very limited partial summary judgment, seeking a court order that determined only that the terms of the settlement agreement were clear, unequivocal, and binding on the defendants. Specifically, Shubee focused on four provisions of the settlement agreement: paragraph 5 (F), which forbade Safe Shield from becoming a preferred vendor for certain organizations; paragraph 5 (G), which forbade defendants from contacting a specified list of wholesalers; paragraph 5 (H), which forbade defendants from using three specified vendors for a period of three years and from using a fourth vendor until December 2009; and paragraph 5 (K) and Appendix B, which forbade defendants from selling specified products or similar-type products. In response, the defendants opposed the motion only as to paragraph 5 (H) regarding the four prohibited vendors, arguing that as to the fourth vendor, the agreement was ambiguous as to the start date of the prohibition against their using that vendor. With regard to the other three provisions of the agreement, the defendants either (i) expressly stipulated that the respective provision was unambiguous or (ii) did not raise any arguments contending that the provision was ambiguous or unclear. Determining the language of all four provisions to be

clear, unambiguous, and enforceable, the court in August 2008 granted Shubee's motion for partial summary judgment. The court made no findings in this partial summary judgment order as to the defendants' compliance or noncompliance with the terms of the settlement agreement. It is from this partial summary judgment order that Safe Shield now appeals.

1. In its enumerations of error, Safe Shield alleges five different ways the trial court erred in the August 2008 partial summary judgment order. Significantly, Safe Shield does not enumerate the May 2008 sanctions order as erroneous in any of its enumerations of error. See *Felix v. State*[2] ("[t]he appellate court is precluded from reviewing the propriety of a lower court's ruling if the ruling is not contained in the enumeration of errors"). Accordingly, we consider only those arguments pertinent to the partial summary judgment order.[3]

2. Nor do we consider most of the arguments made on appeal regarding the partial summary judgment order, as most of those arguments were not raised below. As stated by the Supreme Court of Georgia in *Pfeiffer v. Ga. Dept. of Transp.*,[4]

> our appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, "He must stand or fall upon the position taken in the trial court." Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court. If the rule were otherwise, a party opposing a motion for summary judgment need not raise any legal issue, spend the next year thinking up and researching additional issues for the appellate court to address, and require the opposing party to address those issues within the narrow time frame of appellate practice rules.

---

[2] *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999).

[3] This precludes us from considering Safe Shield's repeated argument in its brief that the products it was selling were not "similar-type products" prohibited by paragraph 5 (K) and by Appendix B of the settlement agreement, as this argument pertains to whether Safe Shield was in compliance with the agreement, not to whether the agreement's terms were unambiguous. Compliance with the settlement agreement was the issue addressed in the May 2008 sanctions order; the August 2008 partial summary judgment order focused solely on whether the four specified provisions of the settlement agreement were ambiguous and enforceable.

[4] *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002).

Therefore, absent special circumstances, an appellate court need not consider arguments raised for the first time on appeal.

(Punctuation and footnotes omitted.) See *Designs Unlimited v. Rodriguez*[5] ("we do not apply a 'wrong for any reason' rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court") (punctuation omitted).

Here, defendants in the trial court below raised one argument and one argument only to oppose Shubee's motion for partial summary judgment: defendants argued that paragraph 5 (H) was ambiguous in that its language could be read to permit the start date of the prohibition against defendants' using the fourth vendor to be either the date the settlement agreement was executed (July 19, 2006) or a date some months later (December 28, 2006). Safe Shield contended that parol evidence created an issue of fact as to which of these two dates was the accurate date. We will consider this argument in Division 3 below. We will not consider the other arguments raised by Safe Shield for the first time on appeal.[6] See *Hall v. Ross*[7] ("this Court will not address arguments raised for the first time on appeal").

3. This brings us to the sole argument we can consider: whether paragraph 5 (H) regarding the restrictions on using certain vendors was ambiguous, and if so, whether Safe Shield's parol evidence created an issue of fact as to the provision's meaning. In making this determination, we employ the following legal principles:

> A release or settlement agreement is a contract subject to construction by the court. It is governed by state law applicable to contracts in general. The cardinal rule of construction is to determine the intention of the parties. Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it. Parol evidence is not admissible to contradict or construe an unambiguous contract. Parol evidence is only admissible when any ambiguity cannot be resolved through the application of the rules of contract construction and when such

---

[5] *Designs Unlimited v. Rodriguez*, 267 Ga. App. 847, 847-848 (601 SE2d 381) (2004).

[6] These include, for example, Safe Shield's arguments that paragraph 5 (K) and Appendix B were ambiguous, and that these two provisions constituted undue restrictions on competition.

[7] *Hall v. Ross*, 273 Ga. App. 811, 814, n. 12 (616 SE2d 145) (2005).

YALE LAW LIBRARY

unresolved ambiguity must be resolved by a jury as a matter of disputed fact. The existence or nonexistence of ambiguity in a contract is a question of law for the court.

(Punctuation and footnotes omitted.) *UniFund Financial Corp. v. Donaghue.*[8] See *City of Demorest v. Roberts & Dunahoo Properties.*[9]

Paragraph 5 (H) provided:

H. *Vendors.* Defendants agree not to use the following vendors for a period of three years from the date on which this Agreement is signed:

- East Nova
- Neutron
- Polytak

Defendants agree to find a new supplier other than Crown Name in Wuhan, China, and will not use Crown Name until December 28, 2009.

We agree with the trial court that this provision of the settlement agreement was clear and unambiguous. With regard to East Nova, Neutron, and Polytak, Safe Shield would not use these vendors for a period of three years from the July 19, 2006 date on which the agreement was signed. With regard to Crown Name, Safe Shield would not use this vendor until December 28, 2009, which general prohibition would necessarily run from the date the agreement was signed, as no other start date of this prohibition was indicated. Obviously, when a party in a written agreement agrees not to engage in specified behavior until a certain date, the start date of that restriction runs from the date the agreement is executed unless otherwise indicated. This understanding is inherent. Cf. *Harrell v. Williams & Sons*[10] ("[n]o time being specified within which the timber was to be cut and removed, it was incumbent upon the defendants to cut and remove the same within a reasonable time *from the date of the instrument*") (emphasis supplied).

Safe Shield's claim that the start date of the prohibition involving Crown Name was not until five months after the agreement was executed is simply unsupported by the language of the provision. Safe Shield contends that the prohibition against using the four vendors was to last only three years as to all such vendors, and that

---

[8] *UniFund Financial Corp. v. Donaghue*, 288 Ga. App. 81, 82-83 (653 SE2d 513) (2007).

[9] *City of Demorest v. Roberts & Dunahoo Properties*, 288 Ga. App. 708, 711-712 (1) (655 SE2d 617) (2007).

[10] *Harrell v. Williams & Sons*, 159 Ga. 230, 235 (1) (125 SE 452) (1924).

since the prohibition against using Crown Name ended on December 28, 2009, the prohibition against using Crown Name did not begin until December 28, 2006. But the reference to the prohibition lasting three years specifically stated that those three years began on the date the agreement was executed and clearly pertained only to the three vendors specified in the bullet points following the colon of the sentence containing the three-year time period; it did not pertain to the completely separate sentence that spoke to the prohibition involving Crown Name, which prohibition was not restricted to three years but rather ran to a specified date (December 28, 2009).

Because this provision was unambiguous, parol evidence was inadmissible to construe it. *UniFund Financial Corp.*, supra, 288 Ga. App. at 82-83. See *Speed v. Muhanna*.[11] Thus, testimony from Safe Shield's representatives that they understood the contract to mean something else was properly disregarded. *City of Demorest*, supra, 288 Ga. App. at 712 (1).

For these reasons, the trial court did not err in granting partial summary judgment that the four specified provisions of the settlement agreement were clear and unambiguous.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED MARCH 6, 2009 — 

*Carl A. Veline, Jr.*, for appellant.
*Martin Snow, John C. Daniel III, Michael N. White*, for appellee.

---

[11] *Speed v. Muhanna*, 274 Ga. App. 899, 905 (2) (b) (619 SE2d 324) (2005).