**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 29, 2017**

# In the Court of Appeals of Georgia

A17A0418. MARTIN v. LEDBETTER et al.

A17A0419. COLSTON v. LEDBETTER et al.

REESE, Judge.

In these companion cases, James Martin and David Colston appeal from the trial court's denial of summary judgment to them on a personal injury complaint[1] filed by the Appellees, David and Lauren Ledbetter.[2] In their complaint, the Appellees alleged that the Appellants negligently conducted inspections of work that had been performed on their water heater's gas exhaust ventilation system (hereinafter,

---

[1] The complaint also asserted a claim for damage to property. The trial court granted summary judgment on the claim to the Appellants, however, and the Appellees have not appealed that ruling.

[2] The Appellees filed their complaint on their own behalf and as the parents and natural guardians of their three minor children.

"exhaust vent") and that, as a result of such negligence, their children had been exposed to high levels of carbon monoxide.[3] On appeal from the court's order, the Appellants contend that the trial court erred in denying their motions for summary judgment, arguing, inter alia, that there was no evidence to show that they had a legal duty to inspect the exhaust vent. For the reasons that follow, infra, we reverse.

Viewed in the light most favorable to the Appellees, as nonmovants,[4] the record shows the following facts. Throughout the relevant time period, the Appellants, Martin and Colston, were employed by the Rome-Floyd Building Inspection Department ("Department"); Martin was an Assistant Building Official, and Colston was employed as a Building Inspector. According to Martin's affidavit, the ordinances and codes of Floyd County and the City of Rome required that all home renovation projects had to be pre-authorized by a permit issued by the Department. Once completed, the permitted renovations had to pass an inspection by an inspector employed by the Department.

---

[3] The Appellees also named as defendants the companies that performed the renovations, Helbing Builders, Inc., and Crider Plumbing Company. The Appellees subsequently settled their claims against these companies and dismissed the claims with prejudice.

[4] See *R & R Insulation Svcs. v. Royal Indemnity Co.*, 307 Ga. App. 419, 420 (705 SE2d 223) (2010).

In 2009, the Appellees contracted with Helbing Builders, Inc. ("Helbing"), for renovations to the structural, electrical, mechanical, and plumbing components of their home. Helbing applied for a building permit from the Department. The permit application stated Helbing's intention to "remodel" the Appellees' home, but did not specify what work Helbing was going to perform. Helbing hired a sub-contractor, Crider Plumbing Co. ("Crider"), to perform the plumbing work for the renovation, and Crider obtained a "plumbing" permit from the Department. Among the work Crider performed on the Appellees' house was the installation of an exhaust vent for the water heater. Crider installed the exhaust vent so that it ran from the water heater in the basement to an opening a few feet below the second floor window of the bedroom of one of the Appellees' children.

On January 27, 2010, Colston conducted a final inspection of the Appellees' home renovation. Although portions of the renovation failed the inspection, those portions did not include the water heater or its exhaust vent. The next day, Martin conducted a second final inspection of the items that had failed Colston's inspection.

In their affidavits, both Appellants averred that they did not inspect the water heater or its exhaust vent because the Department had not issued a permit authorizing any work on those items. Further, neither the Appellees nor their renovation

3

contractors ever requested the Appellants to inspect the water heater or its exhaust vent.

In August 2013, a representative of the Atlanta Gas Light Company notified the Appellees that their exhaust vent had been installed improperly and had to be moved. The Appellees immediately sought a medical opinion as to whether their children might have been exposed to harmful levels of carbon monoxide due to the improper placement of the exhaust vent. Based upon the results, the Appellees filed negligence claims against the renovation companies, Helbing and Crider. They also filed negligence claims against the Appellants, Martin and Colston, in their individual capacities, asserting that they had breached their ministerial duty to properly inspect the exhaust vent.

The Appellants filed separate, but almost identical, motions for summary judgment, asserting that the Appellees had failed to show that they had a duty to perform a ministerial act, i.e., to inspect the exhaust vent, and, therefore, the negligence claims were barred by official immunity. The Appellants also argued that the Appellees' claims were barred by the applicable statutes of limitation and that the Appellees were unable to prove an essential element of their claims. The trial court granted the motions in part, ruling that the Appellees' claims for property damage

4

were barred by the applicable statute of limitation. The trial court denied summary judgment on the remaining claims, ruling that the evidence of record presented disputed issues of fact that required resolution by a jury. This Court granted the Appellants' applications for interlocutory review, and these direct appeals followed.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[5] A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of a plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of a plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the party moving for summary judgment may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges

---

[5] OCGA § 9-11-56 (c).

this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[6]

Thus, the Appellants in the instant case would be entitled to summary judgment if they could show that there is an absence of evidence to prove any essential element of the Appellees' negligence claim.[7] With these guiding principles in mind, we turn now to the Appellants' specific claims of error.

1. The Appellants contend that the trial court erred in denying their motions for summary judgment on the Appellees' negligence claims, arguing that the Appellees failed to present any evidence that showed the Appellants had a legal duty to perform a ministerial act, i.e., inspect the exhaust vent.[8] We agree.

---

[6] *R & R Insulation Svcs.*, 307 Ga. App. at 420 (punctuation and footnote omitted).

[7] See id.

[8] The Appellants raised this argument in the context of their general contention that they were entitled to summary judgment based on official immunity. See *Gilbert v. Richardson*, 264 Ga. 744, 752 (6) (452 SE2d 476) (1994) ("The doctrine of official immunity . . . provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority.") (citations omitted); see also *Grammens v. Dollar*, 287 Ga. 618, 620 (697 SE2d 775) (2010) ("Where there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task.") (citations omitted); *Common Cause/Ga. v.*

It is axiomatic that, "[t]o state a cause of action for negligence, a plaintiff must establish the following essential elements: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury."[9] Moreover, "[t]he threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care. Whether a duty exists upon which liability can be based is a question of law. In the absence of a legally cognizable duty, there can be no fault or negligence."[10]

In this case, the undisputed evidence shows that the home inspections that Martin and Colston performed on behalf of the Department were governed by the Department's practices and procedures. In an affidavit, Martin averred that, "[although] the Department is responsible for home inspections, it is only authorized and required to inspect projects for which a permit has been issued [by the

---

*City of Atlanta*, 279 Ga. 480, 482 (2) (614 SE2d 761) (2005) ("A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.") (citation and punctuation omitted).

[9] *R & R Insulation Svcs.*, 307 Ga. App. at 426 (2) (punctuation and footnote omitted).

[10] *Ford Motor Co. v. Reese*, 300 Ga. App. 82, 84 (1) (a) (684 SE2d 279) (2009) (citations and punctuation omitted). Accord *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 47 (2) (668 SE2d 737) (2008).

Department]." The affidavit explained that, "[w]ithout the issuance of a permit, the Department cannot otherwise be aware of what specific aspects of a home construction project requires inspection."

Martin restated these specific facts in his "Statement of Material Facts To Which There Is No Genuine Issue To Be Tried." In its response, the Appellees stated affirmatively that they did not dispute those facts. In so doing, the Appellees effectively conceded that the Appellants had no duty to inspect the work that had been performed on the exhaust vent *unless* the Department had issued a permit that specifically authorized such work. In fact, in their appellate brief, the Appellees made the following unambiguous concession:

> If the permits issued by the Department in connection with the renovation of Appellees' home covered the work performed on the water heater ventilation, then Appellant[s] [had] a ministerial duty to inspect the ventilation. . . . If the permits did not authorize work on the gas exhaust vent, the Appellant[s] simply had no ministerial duty to inspect the vent.

It necessarily follows that, in order to prove an essential element of their negligence claim, i.e., that the Appellants had a legal duty to inspect the work on the exhaust

vent,[11] the Appellees were required to show that such work was specifically authorized by a permit issued by the Department.[12]

The Appellees failed to meet that threshold burden. Although they attempted to obtain a copy of the permits obtained by Helbing and Crider by filing an "Open Records Request"[13] with the Department, the Department only provided two documents: Helbing's application for a permit to "remodel" the Appellees' home, and a "City of Rome Application Profile" showing that the Department had issued a "plumbing" permit in August 2009. Neither document showed that the Department had issued a permit that authorized work on the Appellees' exhaust vent. Having failed to obtain a copy of such permit through their Open Records Request, the Appellees appear to have abandoned any further efforts to obtain a copy through

---

[11] See *R & R Insulation Svcs.*, 307 Ga. App. at 426; *Ford Motor Co.*, 300 Ga. App. at 84 (1) (a); *DaimlerChrysler Motors Co.*, 294 Ga. App. at 47 (2).

[12] See generally *Howell v. Willis*, 317 Ga. App. 199, 203 (729 SE2d 643) (2012) ("[I]n the case of an inspection[,] the specific act from which liability arises is not an inspector's appearance at a particular site to conduct an inspection. [Instead,] liability must arise from the acts the inspector was required to perform during the inspections.") (citation and punctuation omitted).

[13] See OCGA § 50-18-70 et seq.

other means.[14] For example, there is no evidence that the Appellees took any action to compel the Department to comply with the Open Records Request and provide the "remodel" and "plumbing" permits;[15] that they obtained a subpoena to compel the Department, their renovation company (Helbing), the plumbing company (Crider), or the Appellants to produce the permits;[16] or that they served the Department, Helbing, Crider, or the Appellants with a request to produce the permits.[17] And, pretermitting whether an affidavit or deposition testimony of either Helbing or Crider would have been competent, admissible evidence to show that the permits they

---

[14] See OCGA § 9-11-26 (general provisions governing scope and methods of discovery).

[15] See OCGA §§ 50-18-73 (enforcement provisions); 50-18-74 (penalties for noncompliance with Open Records Request).

[16] See OCGA § 24-13-23 (subpoena for production of documents).

[17] See OCGA §§ 9-11-34 (request for production of documents); 24-13-27 (notice to produce). We note that there is no evidence in the record that, when the Appellees filed their negligence claims in 2015, the Appellants had possession, custody, or control over permits that had been issued by the Department in 2009. See OCGA § 9-11-34 (a) (1).

obtained specifically authorized their work on the exhaust vent,[18] the Appellants failed to produce such evidence.

Thus, the Appellants have shown that the Appellees failed to present "evidence sufficient to create a jury issue on at least one essential element of [the Appellees'] case," i.e., that the Appellants had a duty to inspect the exhaust vent.[19] It follows that the Appellees' negligence claim "tumbles like a house of cards" and "[a]ll of the other disputes of fact are rendered immaterial."[20]

---

[18] See OCGA §§ 24-10-1002 ("To prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required."); 24-10-1003 (duplicates of the writing may also be admissible); 24-10-1004 (admissibility of other evidence of the contents of a writing); 24-10-1005 (proving the contents of public records); 24-10-1007 (the contents of a writing may be proved by the testimony or deposition of the party against whom offered or by that party's written admission).

[19] See OCGA § 9-11-56 (c).

[20] *R & R Insulation Svcs.*, 307 Ga. App. at 420 (punctuation omitted).

Consequently, we conclude that the trial court erred in denying the Appellants' motions for summary judgment.[21] On remittitur, the court is directed to enter an order granting summary judgment to the Appellants on the Appellees' complaint.

2. The Appellants also argue that the Appellees' claims were barred by official immunity[22] and/or the applicable statute of limitation. In addition, the Appellants contend that the Appellees failed to present competent evidence of causation. Given our decision in Division 1, supra, these remaining issues are moot.

*Judgment reversed. Doyle, C. J., concurs. Miller, P. J., concurs specially.*

---

[21] See *DaimlerChrysler Motors Co.*, 294 Ga. App. at 49-50 (2) (b) (Because there was no evidence that the defendant owed a legal duty to the plaintiff, the trial court erred in denying the defendant's motion for summary judgment on the plaintiff's negligence claim.); see also *Kordares v. Gwinnett County*, 220 Ga. App. 848, 851 (470 SE2d 479) (1996) (holding that county bridge inspectors could not be held personally liable for failing to perform a subsurface inspection, because the plaintiffs had failed to present evidence of any policy or procedure that required such an inspection, and it was undisputed that no one had instructed the employees to conduct such an inspection).

[22] See generally footnote 8, supra.

A17A0418.  MARTIN v. LEDBETTER.

A17A0419.  COLSON v. LEDBETTER

MILLER, Presiding Judge, concurring specially,

I agree with the majority opinion's bottom line that the trial court erred in denying Martin and Colson's motions for summary judgment, I must write separately, however, to clarify the legal basis upon which I would rely upon to reverse this case. Since the plaintiffs have failed to establish that the misplaced exhaust vent was the cause of the carbon monoxide exposure the children experienced, I would respectfully reverse.

The majority finds that plaintiffs failed to establish duty as an element of their prima facie case, but this is an issue not raised by the parties nor ruled on by the trial court in its order.[1] Part of our review on appeal is to determine the scope of the issues

_____

[1] The trial court did analyze the issue of duty, but it did so in the context of analyzing the *defendants'* burden to establish the affirmative defense of official immunity, not in the context of determining whether the *plaintiffs* met their burden to establish their prima facie case. These are two separate inquiries.

properly before this Court, and we should not address issues which were not advanced by the parties or ruled on by the trial court. See *Safe Shield Workwear, LLC v. Shubee, Inc.*, 296 Ga. App. 498, 500 (2) (675 SE2d 249) (2009) (this Court is for "the correction of errors of law committed in the trial court") (citation omitted); *Lowery v. Atlanta Heart Assocs., P.C.*, 266 Ga. App. 402, 404 (2) (597 SE2d 494) (2004) (citing *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002)) ("Although under the 'right for any reason' rule this court will affirm the correct ruling of a trial court on grounds not addressed below, we do not apply a 'wrong for any reason' rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court"). For these reasons, I would decide the appeal on the element of causation, as it was raised and ruled upon by the trial court.

As the majority correctly notes, "[t]o recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, [] breach of that duty, causation and damages." (Citation omitted.) *Webb v. Day*, 273 Ga. App. 491, 494 (3) (615 SE2d 570) (2005).

> On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the

2

conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.

(Citation and footnote omitted.) *Mitchell v. Austin*, 261 Ga. App. 585, 586 (583 SE2d 249) (2003).

Here, plaintiffs have failed to introduce any evidence that the improperly placed exhaust vent was a source of carbon monoxide, let alone *the source* that caused injury to the children. Plaintiffs attempt to establish this causal link through the testimony of the children's pediatrician. But his opinion is insufficient to link the children's exposure to carbon monoxide to the improperly placed exhaust vent. The only basis for identifying the exhaust vent as the source of the carbon monoxide release is through pure speculation and conjecture, and this cannot save the plaintiffs from summary judgment. See id.

Plaintiffs raised the issue of causation below, and the trial court erred when it ruled that the issue of causation was properly for the jury. Consequently, I would reverse the trial court's denial of Martin and Colston's summary judgment motions on this ground.

3