## A93A0801. EXXON CORPORATION v. JONES.
### (433 SE2d 350)

BLACKBURN, Judge.

The appellee/plaintiff, Albert Jones, brought the instant negligence and product liability action against appellant/defendant Exxon Corporation (Exxon) and defendant Tugalo Gas Company (Tugalo), the retail distributor of the gas, as a result of an explosion which occurred while Jones and his deceased wife were visiting the home of the Carsons, in-laws of Jones.[1] The explosion resulted in the death of Jones' wife, and in Jones sustaining serious and disabling injuries. The explosion was caused by the ignition of gas vapors. The gas had been delivered to the Carsons' home by Tugalo who in turn purchased the gas from Exxon. In addition to acts of negligence asserted against Tugalo, Jones specifically asserted in his complaint that Exxon negligently failed to warn of the dangerous propensities associated with the use of its product, negligently sold LP gas to inadequately trained personnel, and negligently failed to adequately train those personnel handling its LP gas. Exxon responded to the complaint, and asserted several defenses. After the commencement of discovery, Exxon's initial motion for summary judgment was denied by the trial court. Approximately nine months later, Exxon renewed its motion for summary judgment and this motion was also denied by the trial court. The trial court, however, certified the matter for immediate review, and we granted Exxon's interlocutory application.

The record viewed in the light most favorable to Jones, the non-movant, shows that Tugalo has purchased liquified petroleum gas in bulk from Exxon continuously since 1978 for the purpose of selling the gas to consumers. The gas arrives in Georgia through a pipeline source in Milner, Georgia, and is thereafter transported by Tugalo trucks from Milner, Georgia to Tugalo's facility in Toccoa, Georgia, where it is sold to the ultimate consumer. On September 28, 1984, George Roberts, a driver employed by Tugalo, delivered approximately 400 gallons of gas to the Carsons' home. He admitted that he had been given a pamphlet from Tugalo on the handling of LP gas. However, he has not received any training from Exxon. On the day in question, he turned off the gas supply to the Carsons' home and left a delivery ticket on the lid notifying the Carsons that the gas supply to

---

[1] Defendant Tugalo is not involved in this appeal.

the home had been turned off because the Carsons' tank was empty. Carson was aware of the delivery and opened the valve to permit the gas to flow from the tank.

Robert Axworthy, an official with a major LP gas manufacturer, averred in an affidavit that, according to the standards of the industry, Tugalo's delivery driver should have advised the Carsons not to open the tank valve until an LP professional could check the system for leakage since the Carsons' tank had been completely empty. The purpose of this standard is to protect the customer from critical dangers such as explosions. He further declared that Exxon violated the safety standards by not supplying Tugalo with sufficient safety literature and training.

Upon his arrival for a visit at the Carsons' home on October 4, 1984, Jones and his wife smelled gas vapors. Jones was aware that a gas leakage could cause an explosion and was familiar with the underground gas lines. As his wife walked into the home of the Carsons following a shopping trip with Mrs. Carson, the decedent's sister, the explosion occurred, resulting in the injuries to Jones and the death of his wife. According to a fire safety specialist with the state fire marshal's office, the explosion occurred between the floor of the house and the ground, which was the area where the LP gas had accumulated. Approximately 250 gallons of LP gas had gathered under the Carsons' home between the date of delivery and the date of the explosion. The LP gas tank was located approximately 17 feet from the exterior of the Carsons' home.

In support of its renewed motion for summary judgment, Exxon submitted the affidavit of James Cornwell, Sr., a former account executive with Exxon. In the affidavit, Cornwell averred that he observed that pamphlets concerning the safety of LP gas were mailed directly to the customers by Tugalo. He also opined that Tugalo and its employees were trained in and familiar with the safe handling of LP gas. Wilson Evans, a former marketing executive with Exxon, was also familiar with Tugalo's employees' training in the safe handling of LP gas. In a supplemental affidavit, Tugalo's president indicated that Tugalo's employees attended safety training schools and Tugalo conducted in-house safety meetings for all of its personnel. Moreover, Jones has admitted in his brief in opposition to Exxon's motion for summary judgment that Exxon had provided Tugalo with material safety data sheets which contained warnings, instructions, and other guidelines regarding the handling of the gas, but did not provide instructions on out-of-gas procedures.

In its sole enumeration of error, Exxon contends that the trial court erred in denying its renewed motion for summary judgment because it had no duty to warn the ultimate consumer of the LP gas of the potential gas leaks. More specifically, Exxon maintains that it de-

livered the gas in bulk to a learned intermediary/sophisticated distributor and acted as a "bulk supplier" to a knowledgeable distributor that distributed the gas to and dealt with the ultimate consumer.

"In a products liability case predicated on negligence, the duty imposed is the traditional one of reasonable care and the manufacturer need not provide, from a design standpoint, a product incapable of producing injury. Georgia law does not require a manufacturer to occupy the status of an insurer with respect to product design. . . . The manufacturer is under no obligation to make a [product] accident proof or foolproof, or even more safe. The public policy enunciated by the legislature is a predominate factor in our determination." (Citations and punctuation omitted.) *Weatherby v. Honda Motor Co., Ltd.*, 195 Ga. App. 169, 170 (393 SE2d 64) (1990). " 'Whether a duty to warn exists . . . depends upon foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger. [Cit.] Such matters generally are not susceptible of summary adjudication and should be resolved by a trial in the ordinary manner. (Cit.)' [Cit.] However, . . . since the product was sold to a commercial operator which may reasonably have been expected to be familiar with the dangers resulting from such misuse or neglect, we do not believe that the manufacturer's failure to warn of such dangers may be considered the proximate cause of the injury. To hold otherwise would be to place upon the manufacturer the impossible task of cataloging every conceivable way in which injury might result from the negligent operation or maintenance of a product." *Omark Indus. v. Alewine*, 171 Ga. App. 207, 209 (319 SE2d 24) (1984). "There is no 'duty on the manufacturer or seller to warn of obvious common dangers connected with the use of a product.' [Cit.] 'Where the product is vended to a particular group or profession, the manufacturer is not required to warn against risks generally known to such group or profession.' [Cits.]" *Eyster v. Borg-Warner Corp.*, 131 Ga. App. 702, 704 (4) (206 SE2d 668) (1974). See also *Stiltjes v. Ridco Exterminating Co.*, 178 Ga. App. 438, 441 (2) (343 SE2d 715) (1986).

In the case sub judice, it is undisputed that Exxon sold LP gas in bulk to Tugalo, a commercial distributor that should have been aware of the dangers involved in the handling of LP gas. Since Tugalo was the direct seller of the gas to the ultimate consumer, the Carsons, and the injury allegedly resulted from the negligent delivery of the gas to the Carsons, rather than a defect in the product itself, Exxon's failure to warn cannot be considered the proximate cause of Jones' injuries and the death of his spouse. The record shows that the explosion resulted from an improper leakage of gas. According to rules published by the National LP Gas Association, an association of which Tugalo has admitted in an interrogatory response that it has been trained by, a deliveryman is supposed to check the gas tank for leakage and in-

sure that the customer has closed all service valves prior to the introduction of the gas into the customer's system. Any duty owed to Jones in the handling of the gas after its delivery, was owed by Tugalo, not Exxon. Although Jones maintains that Exxon negligently sold gas to inadequately trained personnel and failed to train those personnel handling the gas, the record shows as admitted by Jones that Exxon provided literature to Tugalo concerning its product. In addition, Tugalo's president averred that the company's personnel are trained in the handling of gas. Moreover, Jones has admitted that he was aware of the danger of an explosion from the gas leakage. Inasmuch as Jones has failed to show that Exxon breached any duty of care owed to him and his deceased wife, and that any breach was the proximate cause of the explosion, Exxon was entitled to summary judgment as a matter of law, and the trial court erred in failing to grant the motion.

*Judgment reversed. Johnson and Smith, JJ., concur.*

DECIDED JUNE 22, 1993 —
RECONSIDERATION DENIED JULY 9, 1993 —

*Alston & Bird, Linda G. Carpenter, Dow N. Kirkpatrick II*, for appellant.

*Lane, O'Brien, Caswell & Taylor, Richard L. Ormand, Darryl B. Cohen, Marsha L. Sutherland*, for appellee.