A10A1537. R & R INSULATION SERVICES, INC. v. ROYAL
INDEMNITY COMPANY et al.
A10A1538, A10A1540. R & R INSULATION SERVICES, INC.
et al. v. ROYAL INDEMNITY COMPANY et al.; and vice versa.
A10A1539. CRANE COMPANY v. ROYAL INDEMNITY
COMPANY et al.
(705 SE2d 223)

DOYLE, Judge.

On May 19, 2003, a fire occurred in an oven at a chicken processing plant located in Oakwood, Georgia, and owned by Wayne Farms, LLC. After the fire, Wayne Farms and its various subrogors, including Royal Indemnity Company (collectively "Wayne Farms"), filed suit against R & R Insulation Services, Inc., a company owned by Richard Robinson ("R & R"), and Crane Company ("Crane"), doing business as Crane Composites, Sequentia Incorporate, and Lasco Composites, LP, seeking $260,000,000 in damages resulting from the fire. In its amended complaint, Wayne Farms alleged that Crane manufactured Class C-rated fiberglass reinforced plastic panels ("Class C FRP"), which were interior finish materials used in the Oakwood facility. Wayne Farms alleged that Crane failed to appropriately test the FRP in foreseeable end-use configurations — specifically, installation using nylon rivets — which resulted in the misrepresentation of the actual combustibility and flame spread properties and mislabeling of the product as a Class C interior finish. Wayne Farms contended that it relied on this incorrect labeling when installing the product in its Oakwood facility, resulting in the extensive spread of the 2003 fire.

Wayne Farms also alleged that R & R, which was contracted to install FRP in the Oakwood facility, failed to sufficiently warn Wayne Farms about the combustibility of the Class C product or adequately select and install appropriate material for the area in a proper configuration. Wayne Farms alleged that R & R should have selected and installed Class A FRP or installed Class C FRP using metal fasteners rather than nylon rivets, which negligence resulted in the extensive spread of the fire at the Oakwood facility. Wayne Farms also contended that both Crane and R & R violated the Life Safety

Code by manufacturing and installing Class C FRP without appropriate testing to ensure that the product met that classification in foreseeable end-use configurations.

In Case No. A10A1537, this Court granted R & R's application for interlocutory appeal of the trial court's denial of R & R's motion for summary judgment. In Case No. A10A1538, this Court granted R & R's and Crane's applications for interlocutory appeal of the trial court's order denying the parties' joint motion for sanctions for spoliation of evidence. In Case No. A10A1539, this Court granted Crane's application for interlocutory appeal of the trial court's denial of its motion for summary judgment. Finally, in Case No. A10A1540, Wayne Farms cross-appeals from the trial court's denial of its motion for partial summary judgment on R & R's and Crane's affirmative defenses of comparative and contributory negligence and intervening or superceding cause. For the following reasons, we affirm in part and reverse in part the trial court's orders.

### Case Nos. A10A1537 & A10A1539

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [a] plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of [a] plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the [party moving for summary judgment] may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[1]

Viewed in this light, the record reveals the following. Wayne

---

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Farms's Oakwood Facility was a "further process facility," at which poultry was cooked, marinated, or otherwise processed and then frozen for consumer packaging. In 2002, the Oakwood facility had three indoor cooking lines known as Lines One, Three, and Five; the facility was experiencing issues with discoloration and paint flaking off the wall and ceiling finishes of Line Three, which potentially could have led to a plant shutdown for food contamination, so Wayne Farms began replacing the old interior finish materials on Line Three. Specifically at issue here is the replacement of the interior finish materials in the Line Three oven room. Wayne Farms's employees replaced the wall coverings in that room, utilizing Crane's Sequentia Class C FRP affixed with nylon rivets, but R & R was contracted to replace the ceiling of the room. Richard Robinson, the owner of R & R, visited the Line Three oven room when Wayne Farms sought bids for the ceiling replacement, and he deposed that the room was very hot, leading him to initially quote Wayne Farms a price for installing stainless steel on the ceiling in order to prevent discoloration of the product over time. This bid was rejected, and Robinson was instructed by Wayne Farms employees to rebid using FRP as the finish material rather than stainless steel. Crane manufactured the particular Class C FRP eventually installed by R & R and marketed it under the name-brand Lasco.

Randy Horwitz and Robert Carrodus oversaw the replacement of the wall and ceiling finishes in 2002. Horwitz was the operations manager and the senior employee at Wayne Farms's Oakwood facility, and Robert Carrodus was the maintenance manager at Oakwood; however, both men left their employment shortly before the fire occurred in May 2003. Horwitz deposed that he and Carrodus discussed using stainless steel as the replacement material for the walls and ceilings; however, because of time constraints and budget year concerns, plant management determined that stainless steel was not an option for the Line Three ceiling. Horwitz also deposed that during the process, he reviewed the technical data for FRP, which in addition to providing technical points for flame development and smoke point, contained a boxed warning that provided a statement similar to the following:

> The numerical flame spread and smoke development ratings are not intended to reflect hazards presented by these products or any other material under actual fire conditions. These ratings are determined by small-scale tests conducted by Underwriters Laboratories and other independent testing facilities using the American Society for Testing and Materials E-84 test standard (commonly referred to as the

"Tunnel Test"). THESE RATINGS ARE PROVIDED FOR MATERIAL COMPARISON PURPOSES ONLY.

Like other organic building materials (e.g., wood), panels made of fiberglass reinforced plastic resins will burn. When ignited, [FRP] may produce dense smoke very rapidly. All smoke is toxic. Fire safety requires proper design of facilities and fire suppression systems, as well as precautions during construction and occupancy. Local codes, insurance requirements and any special needs of the product user will determine the correct fire-rated interior finish and fire suppression system necessary for a specific installation.

Horwitz deposed that he did not discuss with Robinson the manner in which Robinson would affix the FRP to the ceiling and did not discuss with Robinson the use of nylon rivets versus other installation methods, but he directed Robinson to install FRP and to do so in a timely manner in order to avoid breaks in production. Robinson's invoice did not contain a breakdown of price for labor, the FRP, or any fasteners, but his prior work with Crane always involved the use of nylon rivets as the fastening product. Horwitz deposed that Wayne Farms did not install any metal capable of rusting, but this would not have excluded the use of stainless steel fasteners.

Horwitz deposed that at the time he worked at the plant, another cooked-poultry line was being upgraded by replacing FRP around a fryer with stainless steel because the FRP would warp from the heat and discolor to a light brown or yellow. Horwitz explained that he and Carrodus made the decision to replace FRP around the fryer with stainless steel because of issues with the FRP near heat. Horwitz deposed that approximately 60 percent to 80 percent of the plant walls were covered in FRP at the time of the fire.

Hector Rodriguez, who worked at Wayne Farms performing maintenance, deposed that he was directed by Bob Boren, who preceded Carrodus, to purchase and install FRP from various home improvement retailers, independent of R & R. Rodriguez deposed that Wayne Farms was installing FRP in the facility before R & R was contracted to install the material, and Rodriguez always used nylon rivets when installing FRP, which he decided to use because the fasteners were located beside the FRP when he purchased the material at the home improvement store.

Carrodus normally directed Rodriguez to install FRP on the walls of the facility, and Carrodus deposed that Wayne Farms decided to install the product because "it was impervious to certain chemicals and it looked nice for our tours for our customers and that our facility looked good, that's the material we used to put up." Carrodus

deposed that Rodriguez installed FRP in the plant at the direction of Wayne Farms's management, and Carrodus stated that, to his knowledge, no one at Wayne Farms ever sought advice from R & R regarding installation of FRP. Carrodus was aware that Rodriguez used nylon fasteners to adhere FRP to the walls.

Discussing R & R, Carrodus deposed that the company was used for other installation jobs, and Wayne Farms provided interior finishing materials, including FRP for installation by R & R for some jobs, while R & R obtained the materials from other vendors for some jobs. Carrodus thought that R & R was slow but did "superior work." Carrodus deposed that R & R installed the FRP as instructed and did so in a workmanlike manner. Carrodus deposed that, based on the approximate price difference between Class A and Class C FRP, he did not believe that a bid utilizing Class A FRP for the ceiling of Line Three would have been approved by upper management at Wayne Farms. Nevertheless, at the time of the installation, Carrodus was not aware that more than one kind of FRP existed.

When discussing the other materials lining the walls and ceilings in the plant, Robinson deposed that he had previously, at Wayne Farms's direction, installed a drop ceiling in the oven room of Line One with extruded polystyrene foam panels ("EPS"), which Wayne Farms provided to Robinson. The distributer's invoice for the EPS alerted Wayne Farms to the fact that EPS was not fire-rated and was flammable. Carrodus deposed that he assumed the EPS was flammable because of what "the material . . . was made of, [including styrofoam, simply] looked like it could be flammable."

## The Fire

The cause of the fire is disputed by the parties. While R & R and Crane contend that evidence discovered prior to summary judgment shows that the fire may have begun as a hydraulic fluid fire in the ceiling over a char-marker machine, Wayne Farms theorizes that the fire began in the oven room of Line Three, which is adjacent to the char-marker room. Taking the evidence in the light most favorable to Wayne Farms, we assume for the purposes of these appeals that the fire began as it theorizes. Thus, we assume that the fire began in the Line Three oven room when the maxon burner in one of the two jet stream ovens failed. Normally, the gas flame in the oven was propelled down by the maxon device, but the failure resulted in the escape of the gas flame through the top of the oven toward the FRP ceiling.

Wayne Farms theorized that the flame heated the FRP ceiling, causing the nylon rivets used to mount the FRP to fail and the FRP to sag toward the flame. The fire then erupted and spread because

the FRP was ignited on both sides of the material.

After a hearing on the parties' motions, the trial court entered a brief order denying without discussion Crane's and R & R's motions for summary judgment, Wayne Farms's motion for partial summary judgment, and the Appellants' joint motion for sanctions for spoliation of evidence.

## Negligence Per Se

1. Wayne Farms argues that the Life Safety Code, which has been incorporated into the Georgia Minimum Building Standards Code, requires that Crane and R & R must test any interior finishing materials in as-installed configurations before selling or installing these products in Georgia. To support its contention, Wayne Farms relies on Life Safety Code § 6-5.1.4, which states:

> Classification of interior finish materials shall be in accordance with tests made under conditions simulating actual installations, provided that the authority having jurisdiction shall be permitted to establish the classification of any material on which a rating by standard test is not available.

The Life Safety Code further states that all interior finish materials shall be classified based on flame spread and smoke development with Class A being the highest rated and Class C being the lowest rated.[2] The numerical ratings for Class C consist of flame spread of 76-200 and smoke development of 0-450.[3] Wayne Farms has not contested that Class C interior finishes are allowed in buildings such as the Oakwood plant.

> Generally, negligence per se arises when a statute or ordinance is violated. The violation of certain mandatory regulations may also amount to negligence per se if the regulations impose a legal duty. OCGA § 51-1-6 provides: When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.[4]

To recover under a theory of negligence per se,

---

[2] Life Safety Code § 6-5.2.1.

[3] Id.

[4] (Punctuation omitted.) *Norman v. Jones Lang LaSalle Americas, Inc.*, 277 Ga. App. 621, 627-628 (2) (b) (627 SE2d 382) (2006).

the plaintiff must show that the victim fell within the class of persons the [Life Safety Code] was intended to protect and that the injury complained of was the type of harm the [Life Safety Code] was intended to prevent. A showing of negligence per se, however, does not establish liability per se. Breach of duty alone does not make a defendant liable in negligence.[5]

Crane and R & R contend that the Life Safety Code does not require testing other than the ASTM E-84 Steiner Tunnel Test, which was performed on the product and which does not require testing in an end-use configuration. Crane contends that its products are rated by independent laboratories using the test, and the Lasco Class C product was rated as such based on the required test. Wayne Farms, on the other hand, contends that the language of the Life Safety Code § 6-5.1.4 requires interior finish building materials to be tested for flame spread and smoke development in their end-use configurations, which in this case would have been a horizontal application using nylon rivets. Wayne Farms contends that Crane's failure to test the Lasco FRP in this manner constituted negligence per se under the Life Safety Code, and R & R is liable for installing a noncompliant interior finish product.

In this case, pretermitting whether the Life Safety Code section at issue requires Crane or R & R to execute any testing beyond the ASTM E-84 Steiner Tunnel Test, Wayne Farms has failed to show that any breach of this Code-created duty was the proximate cause of its injuries.[6] Wayne Farms's own experts deposed that Lasco FRP installed by R & R met the flame spread and smoke development specifications to be classified in the Class C category when applied in a horizontal configuration using nylon rivets — precisely the configuration used by R & R. Accordingly, regardless of whether Crane failed to complete the particular testing envisioned by Wayne Farms prior to distributing the product as Class C, there is uncontroverted evidence that the product meets the requirements to be distributed as Class C and to be installed as an interior finish under the Life Safety Code, and thus, Wayne Farms has failed to establish that a breach of any duty under the Life Safety Code by Crane resulted in the injury in this case.[7] Accordingly, the trial court erred by denying

---

[5] (Citations and punctuation omitted.) *Brazier v. Phoenix Group Mgmt.*, 280 Ga. App. 67, 70 (1) (a) (633 SE2d 354) (2006).

[6] See, e.g., *Combs v. Atlanta Auto Auction*, 287 Ga. App. 9, 13-14 (3) (650 SE2d 709) (2007) (holding that accident would have occurred regardless of whether defendant violated ordinance).

[7] See id. (theory of liability was foreclosed by failure to produce evidence of proximate

Crane's and R & R's motions for summary judgment with regard to Wayne Farms's negligence per se claims as to the installation of Lasco Class C FRP on the ceiling of the Line Three oven room.

2. Wayne Farms's own employees installed the Sequentia Class C FRP to the walls of the oven room, and during oral argument for the motions for summary judgment on the issue of negligence per se for breach of the Life Safety Code, Wayne Farms's attorney conceded that the Sequentia FRP was "not a part of this lawsuit." Accordingly, we find that Wayne Farms has conceded that it does not have any pending claims against Crane or R & R regarding the installation of Sequentia Class C FRP, and the trial court should have granted summary judgment to Crane and R & R as to those claims.

Accordingly, based on the foregoing, the trial court erred by denying Crane's and R & R's motions for summary judgment as to the negligence per se claims for violations of the Life Safety Code.

## Negligence

R & R and Crane contend that the trial court erred by denying their motions for summary judgment as to Wayne Farms's negligence claims. We affirm in part and reverse in part as fully explained below.

To state a cause of action for negligence, a plaintiff must establish the following essential elements: "(1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury."[8]

At the outset, we note that Crane did not manufacture the nylon rivets used to install the FRP to the ceiling of the Line Three oven room, and the manufacturer of the nylon rivets used in this case is not a party to this lawsuit, nor was the product information or any of the warnings or instructions for the use of that product challenged by any of the parties in this case.[9]

---

cause). See also *Lau's Corp.*, 261 Ga. at 491.

[8] (Punctuation omitted.) *Dozier Crane & Machinery v. Gibson*, 284 Ga. App. 496, 499 (2) (644 SE2d 333) (2007).

[9] We note that the record in this case is voluminous — consisting of more than seventy volumes in the main record, two supplemental records, and thousands of pages. Moreover, the trial court's order denying the motions at hand consists of a one-sentence denial of each motion without further explanation. Thus, in order to conduct a de novo review of the record, our reliance on counsel for appropriate citation to the record was great; it is incumbent not only upon the party alleging error, but also upon the party urging affirmance to support their position with appropriate record citations in support of their arguments. See, e.g., *Lau's Corp.*, 261 Ga. at 491 (nonmovant may not rest on his pleadings, but must point to specific, competent evidence giving rise to a triable issue); *Wilson v. Mallard Creek Holdings*, 238 Ga. App. 746, 747-748 (519 SE2d 925) (1999) (parties must supply citation to the record to support their claims).

## Negligent Failure to Warn

3. "The common-law duty imposed upon suppliers of chattels includes the duty to warn of foreseeable dangers arising from the reasonable use for which the product is intended and requires the exercise of reasonable care to inform third persons of the dangerous condition or of the facts which make the product likely to become dangerous."[10] Nevertheless,

> there is no duty resting upon a manufacturer or seller to warn of a product-connected danger which is obvious or generally known. The same rule applies where it appears that the person using the product should know of the danger, or should in using the product discover the danger.[11]

"Whether a duty to warn exists depends upon foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger. Such matters generally are not susceptible of summary adjudication and should be resolved by a trial in the ordinary manner."[12]

A breach of a duty to warn, however, must also be the cause of the injury about which the plaintiff complains, and the plaintiff must present evidence supporting a reasonable inference that the warning provided by the defendant would prevent the injury.[13]

> An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough. . . .[14]

(a) Crane contends that the trial court erred by denying its motion for summary judgment as to Wayne Farms's claims that it failed to adequately warn of the dangers of installing Lasco Class C FRP in ceiling applications with nylon rivets. We disagree and affirm the denial for the following reasons.

---

[10] (Punctuation omitted.) *Dozier Crane & Machinery*, 284 Ga. App. at 499 (2).

[11] (Punctuation omitted.) *Moore v. ECI Mgmt.*, 246 Ga. App. 601, 606 (2) (542 SE2d 115) (2000).

[12] (Citation and punctuation omitted.) *Omark Indus. v. Alewine*, 171 Ga. App. 207, 208-209 (319 SE2d 24) (1984).

[13] See *Niles v. Bd. of Regents &c.*, 222 Ga. App. 59, 61 (2) (473 SE2d 173) (1996).

[14] (Citation and punctuation omitted.) Id.

(i) Crane argues that it did not owe a duty to Wayne Farms to warn of any danger of adhering Lasco Class C FRP to the ceiling because Crane had no actual or constructive knowledge of the alleged defect. Nevertheless, it is foreseeable that the public will rely upon recommendations for installation made by a manufacturer, which in this instance, included recommendations for ceiling-mounted FRP using either nylon drive rivets or noncorroding fasteners. Therefore, whether Crane breached a duty to adequately warn consumers about fastening methods recommended in its literature and whether this failure was the proximate cause of Wayne Farms's injury is an issue for the jury.[15]

(ii) Equally unmeritorious is Crane's contention that Wayne Farms's prior use of FRP transformed Wayne Farms into a "sophisticated user" or absolved Crane, as a matter of law, of any duty to provide warnings about its recommended installation methods.[16] While questions exist concerning Wayne Farms's degree of knowledge of installation methods, which may have been more or less appropriate for its facility,[17] we again do not find that the evidence presented by Crane (or lack of evidence presented by Wayne Farms) necessarily compels a finding that Crane owed no duty to investigate or warn in this instance.

We agree with Crane that it cannot possibly foresee the multitudinous applications of its product within a building and that Wayne Farms was in the best position to know of the specific facts related to the installation that may have required a particular method of affixing the product.[18] Nevertheless, as we previously noted, Crane recommended certain installation methods, and it is for the jury to determine whether it provided the appropriate level of

---

[15] See *Boyce v. Gregory Poole Equip. Co.*, 269 Ga. App. 891, 895-898 (1) (c) (605 SE2d 384) (2004).

[16] Compare *Niles*, 222 Ga. App. at 60-61 (1) (holding that no duty existed to warn a doctoral physics student who graduated with highest honors in chemistry about dangers of mixing chemicals or about the necessity to take precautions before doing so).

[17] We specifically note that in 1993, Wayne Farms may have conducted its own in-house testing of FRP and its potential installation methods, resulting in an in-house determination that only Class A FRP with metal fasteners be utilized in sensitive areas of the plant. We do not find the documents produced before the trial court conclusive of this fact, however, although reasonable inferences may ultimately be drawn by the jury based on the documents and related testimony.

[18] See *Exxon Corp. v. Jones*, 209 Ga. App. 373, 375 (433 SE2d 350) (1993) (Because "the product was sold to a commercial operator which may reasonably have been expected to be familiar with the dangers resulting from such misuse or neglect, we do not believe that the manufacturer's failure to warn of such dangers may be considered the proximate cause of the injury. To hold otherwise would be to place upon the manufacturer the impossible task of cataloging every conceivable way in which injury might result from the negligent operation or maintenance of a product.") (punctuation omitted).

warning for those methods.[19]

(iii) Crane contends the hazard here — that FRP would ignite and burn in a fire — is an open and obvious hazard for which it owed no duty to warn. We recognize that being burned from a fire is often cited as an example of an injury from an open and obvious danger;[20] the danger is not so clear in this case. For instance, Carrodus deposed that while the EPS used in the facility appeared to be flammable, he offered no such testimony regarding FRP. It is undisputed that Crane manufactures FRP with various levels of fire retardant material, which are not necessarily apparent simply from looking at a piece of the material. Thus, while generally speaking one might understand that a plastic material will melt or burn when exposed to an open flame, it does not necessarily follow that one would understand this particular product would burn in the manner and speed alleged by Wayne Farms.[21] Accordingly, we find this argument without merit.

(iv) Crane also contends that Wayne Farms has failed to present evidence that any failure to warn about the use of nylon rivets was the proximate cause of Wayne Farms's injury.

First, Crane contends that the cause of the fire and reasons for its spread remain unknown, and thus, Wayne Farms's contention that the nylon rivets and FRP caused the spread of the fire is too speculative to support the denial of summary judgment in Crane's favor. We disagree. Wayne Farms has presented evidence in the form of expert testimony, photographs, and testing upon which a jury could reasonably conclude that the FRP spread the fire. Normally, issues of proximate cause are not susceptible to summary adjudication except in the most plain and palpable cases, and we determine that this case is not among those so suited.[22] While the jury may ultimately determine that any additional warning would not have prevented the harm here, that question is not for this Court to determine at this stage of the proceedings.

Next, Crane maintains that Wayne Farms was not aware of and did not rely upon any recommendation made by Crane regarding fastening materials, which prevents a finding of proximate cause in this instance. This argument fails. Crane made recommendations for

---

[19] See id. ("Whether a duty to warn exists depends upon foreseeability of the use in question. . . .") (punctuation omitted).

[20] See, e.g., *White v. Ga. Power Co.*, 265 Ga. App. 664, 666 (1) (595 SE2d 353) (2004) ("The danger from fire or water is one that even young children may be said to apprehend.") (punctuation omitted).

[21] Compare with id. (danger of drowning in deep water or being burned by a fire are open and obvious dangers); *Moore*, 246 Ga. App. at 607 (2) ("The danger of electrocution from miswiring an electrical appliance should be both open and obvious to an experienced installer.").

[22] See *Eyster v. Borg-Warner Corp.*, 131 Ga. App. 702, 706 (4) (206 SE2d 668) (1974).

the installation of its product, and it is clear from the deposition testimony of Robinson and Rodriguez that the methods for affixing the product at Wayne Farms were common in the industry and consistent with Crane's recommendation, even if Wayne Farms did not rely directly upon Crane's literature for its installation methods.[23] Thus, there exists at least a question of fact as to whether an adequate warning by Crane would have prevented the spread of fire here.

Accordingly, we affirm the trial court's denial of Crane's motion for summary judgment as to its claims that Crane failed to provide adequate warning about installing to the Line Three ceilings Lasco Class C FRP with nylon rivets.[24]

(b) R & R contends that the trial court erred by denying its motion for summary judgment with regard to its alleged failure to warn about the dangers of installing Lasco Class C FRP to a ceiling with nylon rivets. We agree and reverse.

First, to the extent that Wayne Farms contends that R & R should be liable for failing to warn of any alleged hazards associated with the installation of Class C FRP using nylon rivets, we hold that there was no such duty because Wayne Farms has failed to establish through affirmative proof that this information was provided by Crane to users of FRP or that R & R actually or constructively knew at the time of installation that this particular configuration may affect the FRP's fireworthiness.[25] Moreover, Wayne Farms has presented no affirmative evidence regarding warnings or product information provided to R & R by the manufacturer of the nylon rivets used in the installation or that R & R knew or should have known through its own experience with installation with nylon rivets that the mechanism was not appropriate for the ceiling of Line Three.[26] As we stated earlier, a plaintiff must respond to a motion for summary judgment by presenting affirmative proof and may not merely rest upon its pleadings.[27] Accordingly, the trial court erred by denying R & R's motion for summary judgment as to any allegation

---

[23] See *Boyce*, 269 Ga. App. at 897 (1) (c) (2).

[24] For the same remaining factual questions, we find that Wayne Farms's negligent misrepresentation claims as to the flame spread qualities of Lasco Class C FRP and whether Crane negligently supplied information based on testing that lacked information regarding each fastening device must also proceed past summary judgment. See id. at 898-899 (2).

[25] See *Deloach v. Rovema Corp.*, 241 Ga. App. 802, 804 (527 SE2d 882) (2000) (seller's liability limited to dangers known at time of the product sale). Compare *Boyce*, 269 Ga. App. at 896-897 (1) (c) (2) (investigation by seller may impose additional duty to warn of defect).

[26] See *Deloach*, 241 Ga. App. at 804. Additionally, Wayne Farms's own employees purchased nylon rivets at various home improvement stores and would have been provided with the same warnings and information about the product, whatever those warnings and information may be.

[27] See *Lau's Corp.*, 261 Ga. at 491.

of R & R's negligence for failing to warn of the complaint.

(c) R & R also argues that the trial court erred by denying its motion for summary judgment as to its alleged failure to suggest installation of Class A FRP or warn against installing Class C FRP. We agree and reverse.

R & R argues that any duty to warn was extinguished by Wayne Farms's knowledge of the manufacturer's warnings. R & R contends that under Georgia law,[28] it was not under a duty to provide duplicative warnings regarding Class C FRP's flame spread properties because the manufacturer's warnings were previously provided to and known to Wayne Farms. Horwitz deposed that he had reviewed Crane's product specifications prior to having the ceiling replaced with FRP and was satisfied with the flame spread and smoke production information. The fact that R & R was aware that the oven room was hot is of no moment. There are no allegations or facts to support a finding that the FRP or nylon rivets spontaneously combusted or sagged merely from the ambient temperature of the room. Rather, under Wayne Farms's theory of the case, the FRP combusted as a result of a malfunction of its oven, and there is no evidence that R & R was aware of the function of the oven or that it was likely to malfunction and shoot flames into the air. Moreover, Wayne Farms installed the same class FRP on the walls of the same room, presumably with the awareness that the oven generated a great deal of heat and that a potential fire hazard existed within the room, and Wayne Farms also provided EPS, which has no flame rating, to R & R and directed R & R to install the EPS in a similar oven room. Finally, Wayne Farms has presented no case law holding that installers have a duty to suggest installation of the "best" product, and here, Wayne Farms was aware of the same manufacturer's warnings about FRP as R & R. That R & R did not insist Wayne Farms use a different product is not sufficient to sustain a claim for negligence.[29]

## Negligent Manufacturing

4. To the extent that Wayne Farms alleged in its complaint that Crane was negligently manufacturing Lasco Class C FRP, we reverse the trial court's denial of summary judgment. "In order to establish a negligent manufacturing claim, the plaintiff must come forward with evidence that, among other things, there was a defect in the product when it left the manufacturer that was caused by the

[28] See *Farmer v. Brannan Auto Parts*, 231 Ga. App. 353 (498 SE2d 583) (1998).
[29] See *Niles*, 222 Ga. App. at 61-62 (2), (3); *Exxon Corp.*, 209 Ga. App. at 375; *Eyster*, 131 Ga. App. at 706 (4).

manufacturer's negligence."[30] Wayne Farms has failed to present any evidence that the FRP was negligently manufactured; on the contrary, the material as tested by Wayne Farms's own experts met Class C fire-rating and smoke-development standards.[31] As stated above in Division 3, any allegations that the nylon rivets were somehow defective should have been brought against the manufacturer of that product, which was not produced or distributed by Crane.

## Negligent Installation

5. To the extent that Wayne Farms has asserted claims of breach of warranty to perform in a workmanlike manner against R & R by installing Lasco Class C FRP with nylon rivets rather than Class A FRP or Class C FRP with metal fasteners, we hold that the trial court erred by denying R & R's motion for summary judgment.

> The law imposes upon building contractors and others performing skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which is generally taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession.[32]

As previously concluded, Wayne Farms's own testing concluded that Lasco FRP installed by R & R met Class C ratings for flame spread and smoke production when tested in a ceiling installation utilizing nylon rivets. Thus, the product met the minimum building code specifications for interior finish products, and in any event, Wayne Farms has failed to point to affirmative evidence in the record that R & R breached its duty to perform in a skillful manner by so installing the product.[33] Wayne Farms has therefore failed to produce affirmative evidence of breach of duty on the part of R & R in so installing the Lasco Class C FRP.

## Case No. A10A1540

6. Next, we address Wayne Farms's cross-appeal from the trial court's denial of its motion for partial summary judgment.

---

[30] *Miller v. Ford Motor Co.*, 287 Ga. App. 642, 644 (1) (653 SE2d 82) (2007).

[31] See Division 1, supra.

[32] (Punctuation omitted.) *Hudgins v. Bacon*, 171 Ga. App. 856, 861 (3) (321 SE2d 359) (1984).

[33] Compare id. at 858 (1).

(a) On appeal, Wayne Farms first argues that the trial court erred by denying its motion because Crane's asserted affirmative defenses[34] of intervening or superceding cause and contributory or comparative negligence are related to the start of the fire and not the spread of the fire. Wayne Farms contends that damage from the start of the fire is not at issue in this case, and therefore, the Appellants should be precluded from asserting these defenses. We disagree and affirm the trial court.

> Evidence of contributory negligence showing that the plaintiff "is to some degree responsible for the injury or damages claimed" is relevant and admissible for reduction and apportionment of damages in cases involving injury to persons or property. Closely allied to the doctrine of contributory negligence is the rule of avoidable consequences, which denies recovery for any damages which could have been avoided by reasonable conduct on the part of the plaintiff. And a plaintiff injured by the negligence of another must mitigate his damages as far as is practicable by the use of ordinary care and diligence.[35]

The trial court correctly denied Wayne Farms's motion for partial summary judgment because the jury could find that Wayne Farms's alleged negligence of causing the fire could have been prevented and served to extinguish completely any liability on the part of Crane. Wayne Farms contends that its 50-state survey reflects that most courts in this country have held that the cause of a fire is irrelevant to the question of whether a defendant is liable for fire spread damages. Wayne Farms's cases, however, are inapplicable to the case at hand. Wayne Farms has failed to cite a single case in which the cause of the fire was determined by a court to be unrelated to the issue of whether the manufacturer or installer of a product contained in the property allegedly increased the spread of the fire. The cited cases involve (1) delay in detection or rendering aid;[36] (2) failure of a flame suppression system;[37] or (3) spread of a fire from

---

[34] R & R also asserted various affirmative defenses, but based on our holding in Divisions 4 (b), 4 (c), and 5, we address the appeal of these defenses as to Crane, the only remaining defendant.

[35] (Citations and punctuation omitted.) *Bailey v. Annistown Road Baptist Church*, 301 Ga. App. 677, 682 (1) (689 SE2d 62) (2009).

[36] See *Butler v. Pittway Corp.*, 770 F2d 7 (2nd Cir. 1985); *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F2d 179, 184 (8th Cir. 1972) (arguing that delay in the detection of the fire caused the extensive destruction and resulted from defendant's failure to have a watchman on the premises).

[37] See *Weyerhaeuser Co. v. Thermogas Co.*, 620 NW2d 819, 826 (2001); *Evans Cabinet*

the property of one to the adjacent property of another.[38] It is for the jury to determine liability and amount of damages in this instance, and the determination is not necessarily bound to Wayne Farms's determination that $260,000,000 constituted the loss from the spread rather than start of the fire.[39]

Based on Wayne Farms's theory of negligence, determination of the issue of how and where the fire started necessarily will affect the determination of whether the FRP negligently spread the fire from the failure of the nylon rivets. Here, the evidence of Wayne Farms's knowledge of the properties of FRP and its various fastening methods is a question of fact, and there are additional disputed issues as to whether Wayne Farms could have prevented altogether the fire with the utilization of safety mechanisms.

To the extent that Wayne Farms is asking for exclusion of various pieces of evidence based on the irrelevant nature of alleged safety violations in relation to Crane's alternative theories of causation, such determinations of admissibility of evidence are pre-trial matters that should first be made by the trial court, and we will not address them here.[40] Accordingly, Wayne Farms's enumeration is without merit.

(b) Wayne Farms also contends that Crane's failure to test its FRP in the installation configuration it later suggested to end users constitutes negligence per se on the part of the Appellants, which also bars the assertion of the affirmative defenses of intervening or superceding cause and contributory or comparative negligence. Based on our conclusion in Divisions 1 and 2 of this opinion that Wayne Farms's negligence per se claims fail as a matter of law, this enumeration is without merit.

Based on the foregoing, the trial court correctly denied Wayne Farms's motion for partial summary judgment, and we affirm that decision.

---

Corp. v. "Automatic" Sprinkler Corp. &c., 167 Ga. App. 502 (306 SE2d 750) (1983); Cartel Capital Corp. v. Fireco of New Jersey, 410 A2d 674, 682 (1980); Doyle v. South Pittsburgh Water Co., 414 Pa. 199 (1964).

[38] See Fireman's Fund Ins. Co., 466 F2d at 183 (holding that "[i]f an owner of property negligently allows the spread of a fire on his premises, he may be liable for injury to others even though he has no connection with the fire's origin"); Chicago &c. R. Co. v. Poarch, 292 F2d 449 (9th Cir. 1961) (fire spread from defendant's property onto the property of the plaintiff); Atmore Truckers Assn. v. Westchester Fire Ins. Co., 218 F2d 461 (5th Cir. 1955).

[39] See, e.g., Heston v. Lilly, 248 Ga. App. 856, 857 (1) (546 SE2d 816) (2001) (jury determines what loss or damage flows from a party's negligence).

[40] See, e.g., Dept. of Transp. v. Taylor, 264 Ga. 18, 21 (3) (c), n. 2 (440 SE2d 652) (1994) (a motion for summary judgment is an appropriate vehicle for addressing the insufficiency of a party's evidence, while a motion in limine is the appropriate vehicle for addressing issues of inadmissibility on the basis of relevance or undue prejudice).

## Case No. A10A1538

7. Finally, R & R and Crane contend that the trial court abused its discretion[41] by denying their joint motion for sanctions, specifically, dismissal of the case, for Wayne Farms's alleged spoliation of evidence.

After the May 19, 2003 fire, Wayne Farms began investigating the remains of Line Three, and within two weeks of the fire, eight parties were provided notice of their potential liability by Wayne Farms and of opportunities to inspect the scene. The Appellants were not given notice at that time. By August 2003, Wayne Farms had gutted the remains of Line Three. In September 2003, Wayne Farms notified the Appellants of potential claims against them stemming from the fire. The Appellants contacted Wayne Farms in order to investigate the scene, but were told that the origin area was repaired and was not scheduled by Wayne Farms for an inspection until July 2004.

The Appellants contend that they have been prejudiced by the destruction of the fire scene prior to their investigation because they were precluded from conducting their own investigation into the fire's origin, which they contend is essential to countering Wayne Farms's theory of how the fire started and whether the installation of FRP with nylon rivets led to the negligent spread of the fire. Specifically, the Appellants contend that they were precluded from investigating whether the fire began in the adjacent char-marker room, which they contend is supported by Wayne Farms's initial investigation and by employee eyewitness and firefighter accounts of the scene. The Appellants contend that Wayne Farms was legally obligated to preserve the remains of the char-marker room and its equipment along with the other remnants of Line Three, and the Appellants argue that Wayne Farms has admitted that the destruction of that evidence was prejudicial to the Appellants because examination of the char-marker itself (which Wayne Farms sold) was critical to the Appellants' cases.

Additionally, the Appellants contend that the spoliation of the hydraulic piping system from the ceiling of the char-marker room prejudiced their ability to present an adequate defense, and the prejudice cannot be diminished through the use of other materials (other than the fire remnants) because Wayne Farms did not have an up-to-date drawing of the system at the time of the fire.

The Appellants maintain that Wayne Farms also destroyed any remnants of the nylon rivets, which they have alleged to have failed

---

[41] See *AMLI Residential Properties v. Ga. Power Co.*, 293 Ga. App. 358, 361 (1) (667 SE2d 150) (2008).

and caused the FRP to sag and catch fire, and no other fasteners, which may have been used in attaching the FRP in the oven room, were preserved.

The Appellants also contend that the investigation conducted by Wayne Farms was poorly executed and incomplete and does not diminish any prejudice from destruction of the evidence and removal of the evidence and debris from the scene. The Appellants explain that Wayne Farms did not accurately or thoroughly measure the position of equipment in the oven room in relation to the FRP at issue or thoroughly investigate the hydraulic system, including: determining whether hydraulic fluid remained after the fire, assessing the lines and pipes, or detailing where the hydraulic fluid reservoir was located (or even if one was located) on Line Three. Thus, the Appellants contend that they have been prevented from marshaling facts in support of their defenses to Wayne Farms's claims.

(a) "Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation. Proof of spoliation raises a rebuttable presumption against the spoliator that the evidence favored the spoliator's opponent. . . ."[42] "Where a party has destroyed or significantly altered evidence that is material to the litigation, the trial court has wide discretion to fashion sanctions on a case-by-case basis."[43]

> The trial court should weigh five factors before exercising its discretion to impose sanctions: (1) whether the party seeking sanctions was prejudiced as a result of the destruction of the evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the party who destroyed the evidence acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.[44]

In this case, the trial court provided no explanation in support of its denial of the Appellants' motion either at the hearing on the motion for spoliation of evidence or in its order denying the motion. In conjunction with the voluminous record involved in this case, this lack of explanation from the trial court has resulted in an arduous task of reviewing the determination; nevertheless, we are obligated to presume that the trial court knows and applies the correct law.[45]

---

[42] (Punctuation omitted.) *DeCastro v. Durrell*, 295 Ga. App. 194, 205 (3) (671 SE2d 244) (2008).

[43] *AMLI Residential Properties*, 293 Ga. App. at 361 (1).

[44] (Punctuation omitted.) Id.

[45] See *Munoz v. American Lawyer Media*, 236 Ga. App. 462, 466 (2) (512 SE2d 347)

The Appellants initially prayed for various forms of relief from the alleged spoliation, but by the conclusion of their motion, their prayer was reduced to dismissal of the case. Thus, one of two conclusions follow from the trial court's denial of the motion: either the trial court determined that there was no spoliation of evidence attributable to Wayne Farms, or the trial court determined that dismissal, the only requested relief, was inappropriate based on the scope of any attributable spoliation.[46]

Our review of the record establishes that Wayne Farms spoliated evidence and that spoliation has resulted in prejudice to the Appellants. According to Frank Hagan, who conducted the investigation of the fire scene, on August 11, 2003, approximately two months after the fire and one month prior to providing notice to the Appellants, Wayne Farms removed various pieces of equipment from the scene, including the two ovens, a spiral freezer, and the char-marker. A wall or remnants of a wall between the oven room and the char-marker room was demolished, and although the demolition was documented, the physical remains of the wall itself were not preserved. Because Wayne Farms disposed of the char-marker, spiral freezer, and steam chamber, the Appellants have not had an opportunity to investigate those artifacts, and although some remnants of the ceiling of the char-marker room and oven room remained in evidence, the Appellants were unable to investigate or document the in-place remnants of the ceiling of the oven and char-marker rooms.

Wayne Farms argues that there was no abuse of discretion by the trial court in denying the spoliation motions because the missing char-marker and any evidence from the char-marker room is inapplicable to the proceedings because the origin of the fire is not at issue in this case. The reasoning here, however, assumes the conclusion reached by Wayne Farms's experts that the fire started in the manner they have alleged. In defending the fire spread claims, however, the Appellants have been hampered in presenting their defense to the claims because they were prevented from supporting their theory that the fire started in another location and that Wayne Farms's theory as to their negligence is incorrect. Contrary to Wayne Farms's argument, if the fire's origin was not in the oven or anywhere underneath the FRP ceiling of Line Three — for instance, above the Line Three ceiling instead — then the failure of the nylon rivets would not have caused the flames to spread as they did. Under these circumstances, the ability to examine the char-marker, other

---

(1999); *Green v. Sun Trust Banks*, 197 Ga. App. 804, 807 (3) (b) (399 SE2d 712) (1990).

[46] See, e.g., *Kitchens v. Brusman*, 303 Ga. App. 703, 704 (1) (694 SE2d 667) (2010). Additionally, the Appellants' motion for reconsideration fails to argue that the trial court should have granted another form of relief and, again, prayed only for dismissal of the claims.

machines, the hydraulic system, and remnants of the FRP intact immediately after the fire would have enhanced the Appellants' ability to refute the claims alleged by Wayne Farms.

The photographs and video of the scene are helpful in reconstructing the state of the evidence for the Appellants' experts, but this Court has opined on numerous occasions that "[a]lthough the existence of photographs may mitigate the loss, they are no substitute for the actual evidence."[47]

With regard to their claims, Wayne Farms contends that testing on any Lasco Class C FRP with any nylon rivets will be possible, and thus, the Appellants have not been prejudiced by destruction of the actual fire remains; however, the Appellants were not given an opportunity to investigate whether there were remains of the nylon rivets at the scene or determine the state of the rivets or how they may have detached, if at all, from the ceiling, which evidence may have refuted Wayne Farms's contentions.

(b) Nevertheless, although we have determined that Wayne Farms spoliated evidence to the detriment of the Appellants, we cannot conclude that the trial court abused its discretion by denying the joint motion for sanctions based on spoliation. Normally, a trial court has available a range of sanctions to impose in the event that it determines spoliation has occurred.[48] Here, however, the Appellants failed to seek a remedy other than dismissal in their motion for reconsideration of the trial court's order denying their motion for sanctions for spoliation,[49] and the Appellants' brief before this Court argues that the trial court erred by failing to dismiss the case, but does not allege error for failing to grant another form of relief.[50] Dismissal is usually reserved for cases involving malicious destruction of evidence, which does not appear to be the case here.[51] We are unable, as a matter of law, to hold that the trial court abused its discretion by declining to impose the ultimate remedy available to a court in a case of spoliation.[52] It does not appear from the record that

---

[47] *Bridgestone/Firestone North American Tire v. Campbell*, 258 Ga. App. 767, 769 (574 SE2d 923) (2002).

[48] See *R. A. Siegel Co. v. Bowen*, 246 Ga. App. 177, 182 (2) (539 SE2d 873) (2000).

[49] Cf. *Bridgestone/Firestone North American Tire*, 258 Ga. App. at 771 (addressing only the issue of whether the trial court should have granted harsher sanctions). Compare with *Kitchens*, 303 Ga. App. at 709-710 (1) (c) (remanding for the trial court to fashion the appropriate remedy for spoliation of the evidence based on the specific facts of the case).

[50] See *Pritchett v. Afzal*, 293 Ga. App. 302, 303 (1) (666 SE2d 641) (2008).

[51] See *Bridgestone/Firestone North American Tire*, 258 Ga. App. at 770.

[52] See id. at 771 (holding that, although the trial court would have been authorized to dismiss the complaint based on the plaintiff's spoliation of evidence, it was not mandated as a matter of law to so rule). But see *Baxley v. Hakiel Indus.*, 282 Ga. 312, 313-314 (647 SE2d 29) (2007) (reversing this Court's affirmance of the trial court and holding that it was an abuse of discretion not to impose sanctions for spoliation of a video tape, even if the video did not

Wayne Farms maliciously destroyed evidence, and the ability of the Appellants to present a defense has not been so diminished as to be impossible or improbable. Accordingly, the trial court's order denying the Appellants' motions to dismiss based on spoliation of evidence is affirmed.[53]

*Judgments affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 24, 2010 —
RECONSIDERATIONS DENIED DECEMBER 15, 2010.

*Thompson & Hine, Seth A. Litman, Leslie J. Suson, Smith, Moore & Leatherwood, Edward M. Newsom*, for appellant.

*King & Spalding, Michael M. Raeber, William L. Durham II, Jessica E. Sabbath, Cozen & O'Connor, Michael A. McKenzie, Jefferson C. McConnaughey, Baker, Donelson, Bearman, Caldwell & Berkowitz, Steven G. Hall, Karen D. Fultz, M. Yusuf Mohamed*, for appellees.

---

contain images of the purported drunk driver); *Kitchens*, 303 Ga. App. at 709-710 (1) (c) (holding that the trial court abused its discretion by denying motion for sanctions for spoliation of evidence and remanding for consideration of determination of an appropriate remedy).

[53] We note that a trial court may revise an interlocutory ruling at any time prior to final judgment notwithstanding any holding herein that is now binding on the trial court below. See OCGA § 9-11-60 (h); *Lott v. Arrington & Hollowell, P.C.*, 258 Ga. App. 51, 56 (3) (572 SE2d 664) (2002). See also *Moon v. State*, 287 Ga. 304, 306-308 (1) (696 SE2d 55) (2010) (Nahmias, J., concurring).